**IN THE CRIMINAL COURT OF APPEALS OF TENNESSEE**

**AT NASHVILLE**

February 1997 SESSION

FILED

June 26, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9605-CC-00220 |
| | ) | |
| vs. | ) | Dickson County |
| | ) | |
| **STEVEN A. BUSH,** | ) | Honorable Robert E. Burch |
| | ) | |
| Appellant. | ) | (Voluntary manslaughter) |
| | ) | |
| | ) | |

FOR THE APPELLANT:                 FOR THE APPELLEE:

MICHAEL J. FLANAGAN                JOHN KNOX WALKUP
DALE M. QUILLEN                    Attorney General & Reporter
Attorneys At Law
95 White Bridge Road #208          SANDY R. COPOUS
Nashville, TN 37205                Assistant Attorney General
                                   450 James Robertson Parkway
                                   Nashville, TN 37243-0493

                                   DAN MITCHEM ALSOBROOKS
                                   District Attorney General

                                   ROBERT WILSON
                                   Asst. District Attorney General
                                   P.O. Box 580
                                   Charlotte, TN 36036

OPINION FILED: _____

**AFFIRMED AS MODIFIED**

CURWOOD WITT, JUDGE

OPINION

The defendant, Steve A. Bush, brings a direct appeal from the Circuit Court of Dickson County where he was indicted for murder in the second degree and was convicted of voluntary manslaughter, a Class C felony. He received a sentence of six years to serve in the Tennessee Department of Correction and was ordered to pay restitution in the amount of $8,500.00.[1] On appeal the defendant challenges only the trial court's denial of probation. After a thorough review of the record, we affirm the trial court's judgment; however, we hold that the order for payment of restitution should be vacated.

The defendant was convicted of the voluntary manslaughter of his son-in-law, Danny Leaster, who was nineteen years of age and lived with his wife, Rachel (the defendant's daughter), and their infant son in a mobile home located on property owned by the defendant. The Leasters hosted a small gathering at their mobile home on the evening of November 4, 1994. After the Leasters and guests consumed food and alcohol, Danny and Rachel Leaster argued. The argument culminated in Rachel Leaster leaving the mobile home in Danny Leaster's truck. Upon learning later that his wife had wrecked the truck, Danny Leaster and two companions, Billy Adams and Lisa Leaster, went to Stephanie Springer's house where Rachel Leaster, who was not hurt seriously in the accident, had gone after the accident. Rachel Leaster, Danny, Lisa and Billy Adams went together to get Danny Leaster's truck. When the group arrived at the wreck location, Danny Leaster determined that a wrecker would be required to recover the truck. At his request, Rachel and Lisa Leaster took Adams' vehicle to obtain a wrecker.

---

[1] The defendant was ordered to pay restitution to the victim's mother. The trial court found that she, and not the victim's estate, had paid the funeral and burial expenses.

A few minutes after they departed, the defendant arrived in his car. He was accompanied by his wife, Stephanie Springer, and Springer's infant daughter. Danny Leaster approached the defendant's car casually, in a non-threatening manner. The defendant, who remained seated in his car, accused Leaster of assaulting and contributing to the delinquency of Rachel. Danny Leaster replied, "No, I ain't been hitting her. I'm just trying to get my G-d truck out of the ditch that your daughter put in there." Adams, who had remained on the scene, testified, "The next thing I knowed, bam." Adams testified that when the fatal shot was fired the victim was standing "a little over arm's distance" from the defendant's car and was pointing to his truck. He testified that the victim was unarmed.

Stephanie Springer testified that, after Rachel Leaster wrecked the victim's truck and came to Springer's house, Springer spoke with the defendant on the telephone and informed him that the Leasters had fought, that Rachel had thrown the first punch, and that Danny Leaster "hit her once." Springer testified that the defendant and his wife then came to pick up Springer so that she could show them where the accident had occurred. She further testified that prior to the shooting there was no "bad argument, not really yelling, but more of a high tone." She testified that the victim never made any movements or threatening gestures toward the defendant and that, after the shooting, the defendant appeared calm. Rachel Leaster was not present at the scene when Danny Leaster was shot.

The jury convicted the defendant of voluntary manslaughter. Testimony at the sentencing hearing (including the defendant's) and the presentence report show that the defendant was sixty-one years of age at the time of the sentencing. He had been regularly and continuously employed for a long time at a stove plant in Ashland City. He testified that his wife is diabetic and has other illnesses and that he needed to remain employed in order to have medical insurance coverage available for her. In denying probation, the trial judge referred

to the provisions of Tennessee Code Annotated section 40-35-210(b). Specifically, he cited his reliance upon the evidence adduced at trial and at the sentencing hearing, the principles of sentencing, the arguments of counsel, the facts supporting enhancement and mitigating factors, and the nature and circumstances of the crime. The court declined to find any applicable mitigating factors and found only one enhancement factor, that the defendant used a firearm during the commission of the offense. Tenn. Code Ann. § 40-35-114(9) (Supp. 1996). The trial judge acknowledged the principle of presumptive minimum sentencing in Class C cases and that the defendant was essentially a good man who had "worked hard all his life . . . the type of man . . . the country can be proud of." The court also acknowledged that the defendant was remorseful. However, the trial judge determined that the presence of enhancement factor (a) outweighed all other considerations and justified the maximum sentence within the range. The trial judge then alluded to the facts of the case that were accredited by the jury, including the defendant's arming himself prior to the shooting and the lack of provocation. In the trial court's expressed opinion, the proof supported a conviction for second-degree murder.

The trial court sentenced the defendant to serve six years, the maximum within Range I, Class C. The trial court then acknowledged that it was required by law to consider alternative sentencing. The trial judge stated,

> Essentially what we have is a homicide. And the law of this state is that a suspended sentence is inappropriate in a situation in which a homicide occurs. And I think that is the case here, that it would not be appropriate to suspend the sentence in a homicide case, particularly, in one of this nature in which a firearm was used and there was no provocation and so forth.

With this explanation, the court denied the defendant's request for probation.

On appeal, the defendant concedes the appropriateness of the length of sentence but challenges the denial of probation.

When there is a challenge to the length, range, or manner of service

4

of a sentence, it is the duty of this court to conduct a <u>de novo</u> review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." <u>Id</u>. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely <u>de novo</u>. <u>Id</u>. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternative; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210(a), (b) (Supp. 1996); Tenn. Code Ann. § 40-35-103(5)(1990); <u>State v. Holland</u>, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

In <u>Ashby</u>, our supreme court said:

> "[A] case-by-case approach to sentencing underlies this Act as a fundamental policy. An individual criminal is sentenced based on the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background... Any case-by-case approach will embody discretion, since all of the appropriate factors and circumstances must be weighed and considered as a whole for the disposition of each case."

5

State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991) (quoting State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986)).

## I. Alternative Sentencing.

The defendant is clearly eligible for alternative sentencing in general, Tenn. Code Ann. § 40-35-102(5), (6) (Supp. 1996), and he is eligible for probation as a particular alternative to confinement.  Tenn. Code Ann. § 40-35-102(6).  The trial court is required to automatically consider probation as a "part of the sentencing determination at the conclusion of the sentencing hearing." Tenn. Code Ann. § 40-35-303(b) (Supp. 1996).  The defendant is presumed to be a favorable candidate for alternative sentencing, but the presumption of suitability for alternatives to confinement may be overcome by evidence to the contrary.  Tenn. Code Ann. § 40-35-102(6).

When the defendant requests alternative sentencing, we look first to the presumption of favorable candidacy and to the presence or absence of evidence that would overcome the presumption.  Our analysis includes the considerations enumerated in Tennessee Code Annotated sections 40-35-210(b) and -103(5).  One of these considerations is the "nature and characteristics of the criminal conduct involved."  Tenn. Code Ann. § 40-35-210(b)(4) (Supp. 1996); Ashby, 823 S.W.2d at 169.  In addition we utilize the considerations for ordering confinement that appear in section 40-35-103(1).  One of these is semantically linked to the nature and circumstances of the offense. It is the consideration found in section 40-35-103(1)(B): Confinement may be ordered when it is "necessary to avoid depreciating the seriousness of the offense."  Tenn. Code Ann. § 40-35-103(1)(B) (1990).

The nexus between the nature and circumstances of the offense and sentencing to avoid depreciating the seriousness of the offense is well recognized.

State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991). The nature and circumstances of the offense may serve as the sole basis for denying probation when the facts are "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and it would have to be clear that, therefore, the nature of the offense, as committed, outweighed all other factors ... which might be favorable to grant of probation." State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981); see also State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985). "This standard has essentially been codified in the first part of T.C.A. Section 40-35-103(1)(B) which provides for confinement if it is necessary to avoid depreciating the seriousness of the offense." Hartley, 818 S.W.2d at 375. Thus, the Travis qualifiers apply under the first clause of section 40-35-103(1)(B) to assist the court in determining when the need to avoid depreciating the seriousness of the offense overcomes the presumption of suitability for alternative sentencing.

In the case now before us, the defendant asks for probation, although he mentions on appeal, for the first time in the case, the possibility of split confinement. Since split confinement is a sentence composed partially of confinement and partially of probation, we discern his request for alternative sentencing to be a request for probation entirely, or failing that, probation as a part of split confinement.

At the sentencing hearing, probation was the only form of alternative sentencing proposed to the trial court. When probation is the only form of alternative sentencing sought, a trial court's denial of the probation request could be founded upon (1) a threshold finding that the presumption of suitability for alternative sentencing has been overcome by evidence to the contrary, or (2) a finding that the defendant, although found to be suitable for alternative sentencing,

7

has failed to carry his burden of showing that he is entitled to probation. See State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995); see also Tenn. Code Ann. § 40-35-303(b) (Supp. 1996).

For purposes of our review in this case, we find that the trial court disposed of the issue of alternative sentencing at the threshold stage. He entertained the threshold question of suitability for alternative sentencing in general and essentially found that confinement was necessary. This finding is, of course, a finding that the presumption in favor of alternative sentencing is overcome and that the defendant's claim to alternative sentencing is defeated. His claim to probation, as an included form of alternative sentencing, is necessarily defeated ipso facto.

Given this history of the proceeding, we review the trial court's disposition of the issue at the threshold stage. We find that the trial judge placed on the record his reliance upon the principles of sentencing and upon the other factors mandated by Tennessee Code Annotated section 40-35-210(b) and that he recorded his findings and recited the basis for such findings. Therefore, we review the trial court's judgment with the presumption that the determinations are correct.

The defendant asserts that the trial court acted arbitrarily in denying probation merely because this is a homicide case. He cites the trial court's comment that in homicide cases probation would be inappropriate. Although it has been held that "exceptional circumstances must be shown in order to support probation in a case involving the death of another person," Kilgore v. State, 588 S.W.2d 567, 568 (Tenn. Crim. App. 1979), the legislature has altered the rule by making probation available for offenses such as the one now before us. "[R]eliance upon the mere fact that a violent crime was committed in order to deny probation is ordinarily insufficient to justify total denial of probation." State v. Howard Martin Adams, No. 03C01-9403-CR-00123, slip op. at 18 (Tenn. Crim. App., Knoxville,

8

January 11, 1995). Indeed, "when the legislature provides probation eligibility for an inherently violent offense, the mere fact that the offense was committed is an insufficient basis to deny probation." Id; see also State v. Travis, 622 S.W.2d 529, 533-534 (Tenn. 1981); State v. Hartley, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). Therefore, if the trial judge denied probation merely because this probation-eligible offense was committed, the denial of probation for such reason alone would be unjustified.

We note that the trial judge qualified his comments about the propriety of probation in homicide cases by adding that probation is not appropriate, "particularly, in [a case] of this nature." Furthermore, the court expressly grounded the denial of alternative sentencing in the evidence, the statutory principles of sentencing, and on the nature and circumstances of the offense. The defendant armed himself and then shot the victim. In the court's view, there was no privilege nor provocation for committing this homicide. In its order overruling the motion for new trial, the court stated that confinement was necessary to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1)(B) (1990). The trial judge reached this result, "given the facts of this case and the length of the sentence," because he determined that the jury had extended leniency to the defendant in acquitting him of second-degree murder. This factor is properly considered by the court in finding that confinement is necessary under section 103(1)(B). See State v. Fredrick Dona Black, No. 03C01-9404-CR-00139, slip op. at 3-4 (Tenn. Crim. App., Knoxville, April 6, 1995); see also State v. Nealy Walter Perry, No. 89-133-III, slip op. at 4-5 (Tenn. Crim. App., Nashville, August 29., 1990) (Dwyer, J., concurring and dissenting).

The record in this case demonstrates a basis for concluding that the nature of the offense as committed is especially reprehensible and/or offensive, satisfying Travis and Hartley. The punishment for the unjustified killing of this unarmed, non-threatening victim is limited to a term of six years. The record

9

supports the trial court's denial of alternative sentencing based on its finding that confinement is necessary to avoid depreciating the seriousness of this offense.

As pointed out above, alternative sentencing issues must be determined by the facts and circumstances of the individual case. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986). If the trial court has considered the relevant facts and the findings are adequately supported in the record, the trial court has the discretion to resolve these issues, bottoming the case upon its own facts. State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987); see Ashby, 823 S.W.2d at 168; Fletcher, 805 S.W.2d at 789.

The presumption of suitability for alternative sentencing has been overcome by proof to the contrary. Accordingly, the trial court's ruling that confinement is necessary to avoid depreciating the seriousness of the offense is supported in the record, and the action of the trial court in denying alternative sentencing is affirmed.

## II. Restitution.

On this appeal the defendant has not raised the issue of the trial court's order of restitution. Nevertheless, we review this issue under our authority to address plain error:

> An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice.

Tenn. R. Crim. P. 52(b). The ordering of restitution in this cause is an error affecting the substantial rights of the defendant in light of the Tennessee law applicable to this case as amplified in State v. Davis, 940 S.W.2d 559 (Tenn. 1997). In Davis our supreme court considered whether a trial court had the statutory authority to order restitution along with a sentence of incarceration. The court reviewed the language of Tennessee Code Annotated sections 40-35-104(c)(2), -

10

303(d)(10), and -304(a) and found that restitution may be ordered in conjunction with a sentence of confinement only when the latter is suspended and the defendant placed on probation. Davis, 940 S.W.2d at 561. The court concluded that a trial court has no authority to "impose restitution as part of a custodial sentence." Davis, 940 S.W.2d at 562.

The legislature amended section 40-35-104(c)(2) in order to provide for the payment of restitution in addition to "any other sentence authorized by this subsection." Pub. Acts, ch. 699 (1996). This amendment applies to any defendant sentenced on or after July 1, 1996. The defendant in the case now before us was sentenced on June 21, 1995. Therefore, the rule announced in Davis controls, and we must conclude that the trial court did not have the statutory authority to order restitution as a part of the defendant's sentence of confinement. See also State v. Timothy Alan Lockridge, No. 01C01-9603-CR-00090, slip. op. at 6 (Tenn. Crim. App., Nashville, May 7, 1997) (finding that an order of restitution in conjunction with confinement is not statutorily-authorized under Davis, when the sentencing occurred prior to July 1, 1996). The requirement of the payment of restitution must be vacated.

### III. Conclusion.

The judgment of the trial court is modified in order to vacate the order of payment of restitution, and in all other respects the judgment of the trial court is affirmed.

_____

Curwood Witt, Judge

11

CONCUR:

_____

Gary R. Wade, Judge

_____

David G. Hayes, Judge