# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs October 30, 2001

## STATE OF TENNESSEE v. JERMAINE DRIVER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-01552     Joseph P. Dailey, Judge**

_____

**No. W2001-00376-CCA-R3-CD  - Filed February 8, 2002**

_____

The defendant, Jermaine Driver, appeals his conviction of attempted first-degree murder, which was based on an assault by the defendant and two other men upon the victim. After a thorough review of the record, we conclude that there is sufficient evidence to establish that the assault was a premeditated and intentional attempt to kill the victim. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Charles W. Gilchrist, Jr., Memphis, Tennessee, for the appellant, Jermaine Driver.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer Smith Nichols, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Jermaine Driver, and his brother, Anthony Driver, were indicted on one count of attempted first-degree murder. The defendant was tried separately from his brother. A jury convicted the defendant, and the trial court sentenced the defendant to twenty-five (25) years as a standard Range I offender. The defendant's motion for new trial was denied, and this timely appeal followed. On appeal the defendant raises a single issue: whether there was sufficient evidence to support his conviction for attempted first-degree murder.

## Facts

According to his testimony, the victim, Donald Walton, had known the defendant and his brother, Anthony Driver, for several years. The victim admitted that he had purchased crack cocaine from Anthony Driver on several occasions over a period of years. The events that

culminated in the instant offense began on a Monday, when the defendant asked to use the victim's car. The victim testified that he had allowed Anthony Driver to use his car in exchange for crack cocaine in the past. After telling the defendant that he had to have his car back in time to go to work the next morning, he agreed to allow the defendant to use his car for three hours in exchange for twenty dollars worth of crack cocaine. After three hours, the victim met the defendant and made a second deal for three more hours in exchange for more crack cocaine. At midnight, when the time for the second deal expired, the victim agreed to allow the defendant and Anthony Driver to keep the car as long as they drove him to work at seven o'clock in the morning. In exchange, Anthony Driver gave the victim more crack cocaine.

On Tuesday morning, the defendant picked the victim up and drove him to work as agreed. That afternoon, both the defendant and Anthony Driver arrived to pick the victim up from work, and he made another deal with the brothers allowing them to keep the car another three hours. At nine o'clock p.m. on Tuesday, the victim made a deal with Anthony Driver for three more hours. According to the terms of the deal, the victim was supposed to get his car back at midnight but at six o'clock the next morning the victim still did not have his car. The victim called the defendant and told him that he needed his car to drive to work. Shortly thereafter, the defendant arrived in the victim's car and asked to make another deal. The victim refused and drove himself to work.

The victim testified that he looked for the brothers when he got off work on Wednesday in order to pay the defendant money he owed for crack cocaine and to return tools that had been left in the trunk of his car. However, the victim did not see either the defendant or Anthony Driver the rest of the day on Wednesday. While driving to his grandmother's house after work on Thursday, the victim saw the defendant and Anthony Driver. He parked his car on the side of the street, and he and the passenger in his car got out of the car. The victim opened the trunk of the car so that the defendant could retrieve the two tire jacks and lug wrenches that had been left in the trunk. At this time, the defendant told the victim that he had been looking for him. The victim did not respond but continued to stand by while the defendant removed the tools from the trunk of the car. Anthony Driver was also present, and he told the victim that he owed the victim for the extra time he kept the car. Anthony Driver also told the victim that the victim owed the defendant money for crack cocaine that he purchased from the defendant on Tuesday. Anthony Driver repeated the statement, "I owe you but you owe [the defendant]," several times.

According to a deal the victim had made with the defendant earlier in the week, he owed him twenty dollars. In the victim's opinion, however, he no longer owed the defendant any money because of the extra time the brothers had kept his car. However, he eventually responded to Anthony Driver's statements by saying "I'm tired of hearing this" and pulling fifteen dollars from his pocket. The victim handed the fifteen dollars to the defendant, and the defendant pushed it away. The victim responded "I guess you want a twenty." He told the defendant he would go to his grandmother's house to get the rest of the money. The defendant agreed but told him that he would have to leave his car there and walk to his grandmother's house. The victim refused to walk. At this point, the passenger from the victim's car, who had been listening to the conversation, pulled five dollars from his pocket and tried to hand it to the defendant. The defendant refused the money and swung at the victim with one of the lug

wrenches that had been in the victim's trunk. The victim is six feet, five inches tall and was able to block each of the defendant's swings with his left hand. On the fourth swing, the victim caught the lug wrench and took it from the defendant. The defendant turned and ran away because, in the victim's opinion, he was afraid that the victim was going to hit him back with the lug wrench. However, the victim maintains that he did not plan to hit the defendant.

The altercation occurred on the side of the street and there were "many people" standing nearby watching was what happening. Anthony Driver was standing a few feet away leaning against a wood plank. However, he was not involved until the defendant ran away. Once the defendant left, Anthony Driver approached the victim and began hitting him in the legs with a piece of wood, which the victim believed was smaller than a two-by-four. The victim testified that he wanted to leave but that he did not because he would have had to turn his back to Anthony Driver in order to get into his car. In his opinion, "you should always face your attackers." The victim still had the lug wrench that he had taken from the defendant. He raised the lug wrench and said that he was "tired of being hit." Just as he was about to hit Anthony Driver with the lug wrench, he changed his mind. Instead, he said "this is for nothing, absolutely nothing." The lug wrench slipped from his hand and fell to the ground. Anthony Driver retrieved the lug wrench and the two men stood facing each other.

After being gone for less than two minutes, the defendant returned with another man. Both of them were carrying pieces of wood similar to the one that Anthony Driver used to hit the victim in the legs. All three men began hitting the victim, and at some point he fell on the ground. The victim covered his head while the three men hit him repeatedly. Then they all stopped hitting him and began to walk away. As they were leaving, the victim's friend, who had been watching what happened, informed Anthony Driver that they had "hurt him bad." Anthony Driver responded, "that's what he gets."

After the assault was over, the victim tried to stand but could not. He heard sirens in the distance and was taken to the hospital by ambulance. He was hospitalized for a week. The victim and his mother testified about the injuries he sustained. He had a fractured skull, a lacerated liver, two broken fingers, and an injury to his shoulder. Because of his head injury, the victim was unable to speak for a period of time after the assault. Although he has undergone speech and physical therapy, he is still unable to articulate his thoughts the way he was able to before the assault.

## Analysis

The defendant contends that the evidence was insufficient to support his conviction for attempted first-degree murder. The defendant concedes that the evidence adduced at trial established that he assaulted the victim but alleges that there was no evidence that the defendant had the intent to kill the victim.

When a defendant challenges the sufficiency of the evidence, the standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

-3-

doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92, (1979). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This Court must afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835. Therefore, this Court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the trier of fact from the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Furthermore, it is the defendant's burden to demonstrate that the evidence is insufficient because a jury's finding of guilt removes the presumption of innocence and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In order to establish the criminal attempt element required to prove attempted first-degree murder, the state must first prove that the defendant acted with the requisite culpability required for premeditated first degree murder, and second that the act or acts were in furtherance of the attempted crime. See Tenn. Code Ann. § 39-12-101(a); Wyatt v. State, 24 S.W.3d 319, 323 (Tenn. 2000).

Attempted first-degree murder as alleged in the indictment also requires proof that the attempted murder was premeditated and intentional. Tenn. Code Ann. § 39-13-202(a)(1). Once a homicide or attempted homicide is established, it is presumed to be the offense of murder in the second degree or an attempt to commit murder in the second degree. State v. Boyd, 909 S.W.2d 50, 53 (Tenn. Crim. App. 1995). In order to elevate the offense to first-degree murder or an attempt thereof, the state has the burden to overcome that presumption by proving that the murder was intentional and premeditated. Id. A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-106(a)(18). Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence. State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). "'Premeditation' is an act done after exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d). Although premeditation requires that "the intent to kill must have been formed prior to the act itself[, it] is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time." Id. In addition, the element of premeditation is a question of fact to be determined by the jury. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000). Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the offense. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). The Tennessee Supreme Court has recognized several circumstances from which a jury may infer premeditation, including: evidence of procurement of a weapon; the nature of the killing or attempted killing, including the defendant's use of a deadly weapon upon an unarmed victim; and the killing or attempted killing of the victim while the victim is retreating or attempting to escape. Bland, 958 S.W.2d at 660; Bordis, 905 S.W.2d at 221-22.. With respect to the nature of the attempted killing, repeated shots or blows will not alone establish premeditation but may be considered along with other circumstances in assessing the existence of premeditation. State v. Brown, 836 S.W.2d 530, 542 (Tenn. 1992).

-4-

In the instant case, considering the proof in the light most favorable to the state, we conclude that there was sufficient evidence to support the defendant's conviction for attempted first-degree murder beyond a reasonable doubt. The evidence concerning the nature of the assault, the circumstances surrounding the assault, the use of a deadly weapon on an unarmed victim, and the seriousness of the injuries support an inference that the defendant intentionally, and with premeditation, attempted to kill the victim. The defendant began his assault with a deadly weapon by swinging a lug wrench at the victim's head. Unsuccessful in his attempts to strike the victim with the lug wrench, the defendant ran away and procured another weapon. He then returned with another person, who also had a weapon. The defendant, along with two other men, then continued the assault upon the unarmed victim by repeatedly hitting him in the head with boards and a lug wrench. The assault continued even after the victim fell to the ground and resulted in life threatening injuries. The victim was hospitalized for a week to treat his fractured skull and multiple internal injuries. Based upon such evidence, the jury could have found beyond a reasonable doubt that the defendant intended and attempted to commit first-degree murder. This issue is without merit. Accordingly, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-5-