IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 24, 2008

**STATE OF TENNESSEE v. ANTONIO BRADEN**

**Appeal from the Circuit Court for Williamson County**
**No. II-CR012317     Timothy L. Easter, Judge**

_____

**No. M2007-02544-CCA-R3-CD - October 27, 2008**

_____

The Defendant, Antonio Braden, was convicted of one count of attempted second degree murder, a Class B felony.  He was sentenced to serve twelve years in the Department of Correction.  In this direct appeal, the Defendant contends (1) that the evidence at trial was insufficient to support his conviction; and (2) that the trial court erred in failing to instruct the jury on aggravated assault as a lesser included offense of attempted second degree murder.  We conclude that these contentions lack merit, and we accordingly affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Deanna Bell Johnson, Brentwood, Tennessee, for the appellant, Antonio Braden.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Kim R. Helper, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**Factual Background**

The actions giving rise to this case occurred on August 3, 2006.  On that afternoon, the victim, Marcus Cannon, was inside his mother's house cooking hamburgers.  A number of people were present at this time.  The victim's mother, Dorothy Cannon, and one of the Defendant's sisters, Erica Cannon, stood outside the house in the front yard.  Family friends, Jameca and Elaxis Baugh, were inside the house.

The victim's other sister, Shakeicha Cannon, accompanied by her boyfriend, Marcellus Harris, arrived in Harris' car and parked in front of the house. The Defendant, accompanied by a woman seated in his car's passenger seat and a man seated in the backseat, arrived shortly thereafter and also stopped his car in front of the house, behind Harris' car. The Defendant apparently came by in order to give Harris a pair of tennis shoes. Accordingly, Harris exited his vehicle, opened the Defendant's trunk, and began looking for the shoes while Shakeicha joined her mother in the front yard.

The Defendant was playing music on his car stereo at a very high volume. Jameca, Elaxis, and the victim all testified that they could clearly hear the music inside the house. Dorothy testified that she asked the Defendant to turn the music down. He refused, asking her, "[W]ho is you?" Jameca and Elaxis went to the door and looked outside.

The victim testified that he went outside and approached the Defendant's car. On the way, he noticed that a few of his neighbors were looking out their front doors to investigate the loud music. The victim was wearing only a pair of shorts and was not armed. He asked the Defendant, through the open car window, to turn the music down and also noticed a .38 revolver in the Defendant's lap, which caused him to back up about twelve to fifteen feet. The Defendant again refused, told the victim he could keep the music loud because he was on a "free street," and turned the volume up even more. The victim told the Defendant that the high music volume was disrespectful to his mother's house and again asked the Defendant to turn it down. In response, the Defendant backed up his vehicle a few feet and said "I'm not in front of your house now." Moments later, he pulled forward again, repeating that he was on a "free street." The victim, now somewhere between one and eight feet from the Defendant, and again seeing the .38 in his lap, asked the Defendant to "put his gun up," meaning to put it away, so the two of them could "settle this like men," without the use of weapons.

The Defendant said "what," and picked the gun up from his lap. The woman in his front seat unsuccessfully tried to push the gun back down and dissuade him from firing. He aimed the gun at the victim and fired six times. The first bullet went over the victim's feet and kicked up some gravel behind him, at which point he stepped backwards and froze. The second shot hit the victim in his left thigh. The third shot missed, but the fourth hit him in his right leg, causing him to fall to the ground. The victim would later learn that this shot had shattered his femur. According to the victim, the Defendant then opened his car door slightly, stood up between the door and the body of the car, and fired two more shots, both of which missed.

The victim estimated that about seven seconds elapsed between the first shot and the last. Harris, who was still looking in the Defendant's trunk when the gunshots began, ran from the vehicle, leaving the trunk open. The Defendant got back in the car and sped off. About a block down the street, he apparently realized the trunk was still open. He stopped and waited for the man in his back seat to get out, close the trunk, and get back in the car. The Defendant then sped off again.

Dorothy, Shakeicha, and Erica Cannon witnessed these events from the front yard. Elaxis and Shameca Baugh witnessed them from near the front door of the house. All of these witnesses corroborated the victim's testimony that the Defendant shot him. Dorothy, who Shakeicha had knocked to the ground as the Defendant fired, stood up as he drove away and ran over to the victim, who she testified was now lying in the gravel gutter between her yard and the street, shaking and sweating profusely. She comforted him while Erica went inside to call 911. An ambulance arrived shortly thereafter and took the victim to the emergency room at the Williamson County Medical Center. He later had surgery to repair his legs but still lives in frequent pain.

The Defendant chose not to testify at his trial. The jury convicted him of one count of attempted second degree murder. He now appeals.

## Analysis

### I. Sufficiency of the Evidence

The Defendant argues that the evidence at trial was insufficient to convict him of attempted murder in the second degree. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

#### A. Proof of Attempt to Kill

The Defendant first contends that the proof at trial was insufficient to establish his knowing attempt to kill the victim. Second degree murder is a "knowing killing of another." Tenn. Code

Ann. § 39-13-210(a)(1). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id. § 39-11-302(b). A person attempts to commit second degree murder when he or she acts with intent to knowingly kill the victim and believes his or her conduct will cause the victim's death without further conduct on the person's part. Id. § 39-12-101(a)(2).

The Defendant essentially argues that, given their relatively close proximity, he would successfully have killed the victim had he intended to. We disagree with this argument because "we are not guided by the [Defendant's] marksmanship but, rather, by the circumstances surrounding the shooting." State v. Elder, 982 S.W.2d 871, 875 (Tenn. Crim. App. 1998). Intent, which can rarely be proven by direct evidence and is not supported by direct evidence here, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act, and from all the circumstances of the case in evidence. See State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993).

In this case, the Defendant fired six shots at the unarmed victim after the two argued and in response to the victim's challenge to fight without weapons. Every witness identified the Defendant as the shooter. Two shots hit the victim, one of them shattering his femur. The Defendant drove away only after expending all of the bullets in his gun. A rational jury could have found from these facts, given the use of a deadly weapon, the number of shots, and the seriousness of the victim's injuries, that the Defendant was aware his conduct was reasonably certain to cause death and that he intended to kill the victim. We conclude that the evidence is sufficient to support the Defendant's conviction of attempted second degree murder.

### B. Consistency of Testimony

The Defendant also brings to our attention a number of inconsistencies in some trial witnesses' testimony, including different accounts of (1) whether the Defendant opened his car door and stood up before firing his last two shots; (2) precisely where Dorothy's car was parked in relation to the Defendant; (3) the number of times the victim approached the Defendant's car; (4) who closed the Defendant's trunk as he drove away from the crime scene; (5) where the victim was standing when the Defendant's car arrived; and (6) the precise distance between the victim and the Defendant at the time of the shooting. The Defendant also argues that certain witnesses testified at trial to facts they had not mentioned in previous statements.

The Defendant apparently argues that these inconsistencies so damaged the witnesses' general credibility that no rational jury could have credited their testimony as to the essential elements of attempted second degree murder. In response, we again note that this court may not overturn a trier of fact's credibility determinations in determining sufficiency of the evidence. See Evans, 108 S.W.3d at 236. The Defendant's argument is without merit.

## II. Jury Instruction on Aggravated Assault

The Defendant next contends that the trial court erred in failing to instruct the jury on aggravated assault as a lesser included offense of attempted second degree murder. Tennessee Code

Annotated section 40-18-110 governs jury charges as to lesser included offenses. In relevant part, it states that "[a]bsent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal." Tenn. Code Ann. § 40-18-110(c). The record in this case does not contain any request by the Defendant, written or otherwise, for an instruction on aggravated assault as a lesser included offense of attempted second degree murder.

We also note that this Court has held that aggravated assault is not a lesser included offense of attempted second degree murder. See State v. Albert James Saavedra, No. M2004-02889-CCA-R3-CD, 2006 WL 618299, at *28 (Tenn. Crim. App., Nashville, March 13, 2006), perm. to appeal denied, (Tenn. Aug. 21, 2006).

This issue has no merit.

### Conclusion

Based on the foregoing authorities and reasoning, we affirm the Defendant's conviction.

_____
DAVID H. WELLES, JUDGE