# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 1, 2003 Session

## STATE OF TENNESSEE v. MARCUS ROGERS

### Appeal from the Criminal Court for Shelby County
### No. 01-00606-07      Chris Craft, Judge

### No. W2002-01416-CCA-R3-CD  - Filed July 17, 2003

The Appellant, Marcus Rogers, was convicted by a Shelby County jury of second degree murder and two counts of attempted second degree murder. Following a sentencing hearing, the trial court imposed an effective sentence of thirty-four years for these crimes. On appeal, he argues that the evidence produced at trial was insufficient to support the verdicts. After review, we find the evidence sufficient and affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Gerald Stanley Green, Memphis, Tennessee, for the Appellant, Marcus Rogers.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On July 18, 2000, Shalawn Lane, aka "Q," Charles Horton, Jr., aka "Main Main," and the Appellant, aka "Big Prep," were engaged in a "three man crap game" at Lane's apartment. After Horton lost all of his money, he went outside, where he joined Rickey King, aka "Little Rickey," who was sitting in a lawn chair in front of the apartment. The Appellant and Lane continued to gamble. Lane "won all the money" on this particular occasion; however, he owed the Appellant money from a prior crap game. The Appellant requested Lane to pay him the money owed from his winnings, but Lane refused, stating that he would not pay the Appellant until Friday as they had agreed. Lane then told the Appellant to go "get some more money and come back and gamble."

According to Lane, the Appellant moved towards him as if "he was trying to take the money back." Lane drew his pistol, shot at the floor, and told the Appellant to leave. After the Appellant left, Lane joined Horton and King outside. Thirty minutes to an hour later, the Appellant returned in a vehicle driven by "Tee-Tee."[1] The Appellant exited from the passenger side of the vehicle and began shooting at Lane, Horton, and King. Lane returned fire. Dwight Simpson observed the incident from the laundromat located next to the apartment complex. Simpson saw the Appellant arrive and the shooting begin. He then took cover. After the shooting stopped, he went to see if anyone had been injured. All three individuals suffered gunshot wounds, and Horton, who was shot in the upper back, died as a result of his injuries.

At trial, the Appellant testified that he returned to the apartment to get his money. According to the Appellant, he was fired upon when he arrived at the apartment, and then he returned fire. He stated that he was carrying a gun because he had been carjacked before and he had the gun when the men were playing dice. He claimed that upon his return, he had no intention of shooting anyone and he felt like he was defending himself.

On January 23, 2001, the Appellant was indicted for the first degree murder of Charles Horton, Jr., the attempted first degree murder of Rickey King, and the attempted first degree murder of Shalawn Lane. After a trial by jury, the Appellant was convicted of second degree murder and two counts of attempted second degree murder. At the sentencing hearing, the Appellant received an effective thirty-four-year sentence. His motion for new trial was denied, and this appeal followed.

## ANALYSIS

The Appellant argues that the evidence was insufficient to support his convictions for second degree murder and attempted second degree murder. Specifically, he contends that the evidence is insufficient based upon the following grounds:

1. The shooting was not committed with malice aforethought but was the result of sudden heat upon adequate provocation. He submits that he acted with adequate provocation because he "was aroused by a person that [he] thought was a friend holding a gun on [him], demanding money, shooting at the floor where [he] was standing and ordering [him] to leave his apartment." Furthermore, he argues that his youth should also be considered in this analysis. Accordingly, the evidence only supports a conviction for voluntary manslaughter.

2. The evidence was only sufficient to establish manslaughter because this was sudden mutual combat.

---

[1]This individual is not identified in the record by any other name.

3. Because there was testimony at trial that he fired his weapon in a "fan motion," the State did not prove the required mental element of second degree murder, *i.e.*, a knowing killing. Accordingly, reckless homicide is the most that the State proved at trial.[2]

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. 1999); *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). Instead, the Appellant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

In the present case, the Appellant was convicted of second degree murder and attempted second degree murder. Second degree murder is the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (1997). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tenn. Code Ann. § 39-11-106(a)(20) (1997). Attempted second degree murder may be proven by showing that the defendant "intentionally acted with the requisite culpability to commit the offense of murder in the second degree and the defendant could have been convicted of murder in the second degree . . . if he had actually killed the victims." *State v. Dale Nolan*, No. 01C01-9511-CC-00387 (Tenn. Crim. App. at Nashville, June 26, 1997), *perm. to appeal denied*, (Tenn 1998) (citations omitted); *see generally* Tenn. Code Ann. § 39-12-101(a) (1997).

First, we note that in support of his argument, the Appellant argues that the absence of malice at the time of the killing shows that he is guilty of voluntary manslaughter not second degree murder. "[I]t is now inaccurate to state that the element of malice is the essential distinction between second degree murder and manslaughter." *State v. Williams*, 38 S.W.3d 532, 538 (Tenn. 2001). Instead, "the essential element that now distinguishes these two offenses (which are both 'knowing' killings)

---

[2]It is difficult, if not impossible, to reconcile the Appellant's various theories of defense after examining the issues raised, his legal argument, and his statement of the facts. For example, he argues that the homicide was manslaughter produced by passion; nonetheless, his statement of facts indicates that "[t]he Appellant had no intention of shooting anyone" upon his return. At times, the Appellant contends that he was only "defending himself," which is an intentional act, but argues that he "is only guilty of criminally negligent homicide."

is whether the killing was committed 'in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.'" *Id.* (quoting Tenn. Code Ann. § 39-13-211(a) (1997)). In a related argument, the Appellant contends that the facts support only a conviction of manslaughter because the proof established mutual combat between the parties. Our supreme court has held that the 1989 revised criminal code abrogated the mutual combat doctrine. *Id.* at 539. In so holding, the supreme court observed that the essence of the doctrine was incorporated into the provocation element of the voluntary manslaughter statute. Moreover, the supreme court noted that, although the revised criminal code abrogated the doctrine, a defendant still could use proof of mutual combat to show a jury that adequate provocation warranted a voluntary manslaughter conviction. *Id.* Accordingly, we review the Appellant's issues under the current law.

The evidence established at trial reveals that the Appellant and Lane were arguing over winnings from a dice game. Lane shot at the floor and ordered the Appellant to leave the apartment. The Appellant returned to the apartment thirty minutes to an hour later and shot at Lane, Horton, and King, who were sitting in front of the apartment complex. All were injured, and Horton died as a result of his wounds. Eyewitness testimony corroborates these events. When the evidence is conflicting, the jury must resolve these conflicts under proper instructions and, as in this case, decide whether the homicide was murder, voluntary manslaughter, reckless homicide or criminally negligent homicide.[3] Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the Appellant's conduct, the nature of the act, and from all the circumstances surrounding the commission of the offense. *See State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993); *see generally State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997). We conclude from the proof at trial that a rational trier of fact could have found beyond a reasonable doubt that the Appellant acted "knowingly" and that he was aware that his conduct was reasonably certain to cause the result it produced. Thus, this issue is without merit.

## CONCLUSION

The evidence produced at trial was sufficient to support the Appellant's convictions for second degree murder and two counts of attempted second degree murder. Therefore, the judgments of conviction are affirmed.

_____
DAVID G. HAYES, JUDGE

---

[3] The record indicates that the trial judge submitted instructions on each of these offenses. Thus, in this case, it was for the jury to determine whether the killing of the victim and the shooting of two other victims occurred in a state of passion produced by adequate provocation, whether these acts were recklessly committed, or whether the Appellant "knowingly" fired upon these victims in seeking retribution for his losses in the crap game.