# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 6, 2007

## STATE OF TENNESSEE v. JOE ALLEN BROWN

**Appeal from the Circuit Court for Madison County**
**No. 05-207     Donald H. Allen, Judge**

_____

**No. W2007-00693-CCA-R3-CD  - Filed December 20, 2007**

_____

The defendant, Joe Allen Brown, pleaded guilty to two counts of possession of under .5 grams of cocaine with the intent to sell and/or deliver and was sentenced in the Madison County Circuit Court to an effective four year term to be served in a community corrections program.  On March 16, 2007 the court revoked the community corrections sentence and resentenced the defendant to serve six years in the Department of Correction.  From that order, the defendant appeals.  Upon review, we affirm the judgment below.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Gregory Gookin, Assistant District Public Defender, for the appellant, Joe Allen Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Earls and Shaun A. Brown, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On April 4, 2005, the Madison County Grand Jury indicted the defendant on four counts of possession of cocaine with the intent to sell and/or deliver, Class C felonies. *See generally* T.C.A. § 39-17-417 (2006).  The four counts were merged into two counts of possession of under .5 grams of cocaine with the intent to sell and/or deliver, a Class C felony, and on July 18, 2005, the defendant pleaded guilty to those two counts.  The trial court sentenced the defendant to four years on each count and imposed the sentences to run concurrently, yielding an effective sentence of four years.  The trial court ordered that the sentences be served in a community corrections program.  The special conditions of the community corrections sentence required the defendant to complete a minimum of eight hours per month of community service, complete a total of 100 hours of

community service, pay the court costs and fines at a rate of $50 per month, submit to random drug and alcohol screens, and submit to a drug and alcohol assessment.

The State filed a violation of community corrections warrant on December 8, 2006, alleging that the defendant failed to pay court costs as ordered, failed to remain drug free, failed to report to the community corrections officer as directed, failed to submit a DNA sample as ordered, and failed to provide proof of completing community service work. This warrant was amended on January 25, 2007, to add the charges of failing to remain arrest free and failing to report a new arrest.

The court held a violation hearing on February 12, 2007. At the hearing, community corrections officer Marcus Jones testified that he was supervising the defendant. He testified that the defendant stopped making payments on court costs on August 2, 2006. At the time of the hearing, the defendant owed $2,000 in fines on this case, and he maintained a balance of $1,382.94 on a prior case. Additionally, he testified that the defendant tested positive for cocaine on November 29, 2006, with a drug screen confirming the result on December 7, 2006. He testified that the defendant failed to report the entire month of September, 2006, and only reported once the month of November 2006.

Mr. Jones testified that the defendant failed to show proof of submitting a DNA sample. Mr. Jones confirmed that since the violation warrant was issued, the defendant completed the DNA sample requirement.

Mr. Jones testified that the defendant failed to provide any documentation of completing his community service requirement. When asked to examine a letter from a pastor of a church claiming the defendant did community service work at a church in New Greater Bethel, Mr. Jones testified it was the first time he had seen such documentation and that it contained no listing of the hours allegedly worked.

Finally, Mr. Jones testified that the defendant was arrested for driving on a revoked license on December 30, 2006. Mr. Jones was not informed of this new arrest. On cross-examination, Mr. Jones testified that until September 2006 the defendant did what was asked of him, but then "for some reason he just kind of slacked off."

Robert Richardson of the Jackson Police Department testified that on December 30, 2006, he was on patrol on Preston Street when he observed the defendant driving in a grey vehicle without wearing a seat belt. Mr. Richardson testified that when he conducted a traffic stop the defendant admitted to not having a license or any other identification to verify his name. When Mr. Richardson ran the defendant's social security number through dispatch, he learned that the defendant's license was revoked and that he had nine prior citations for driving on a revoked license.

The defendant took the stand and testified that the cocaine conviction was his first felony, but that his most recent arrest was his 10th citation for driving on a revoked license. The defendant did not deny the most recent offense for driving on a revoked license and said he was

merely trying to help a friend by moving his car. He said that he was unable to contact Mr. Jones about his recent arrest but that he did ask a nephew to inform him. He denied any history of drug use and suggested his positive cocaine test might have been from a night spent at the house of a friend who was cooking crack cocaine. He claimed to have no idea that his court cost payments were going to pay the fees of older cases instead of his most recent one. The defendant testified that his failure to report to Mr. Jones was a result of his kidney problems, which had forced him to travel to Memphis for treatment and left him hospitalized in November. He testified that he did in fact have blood drawn for a DNA test but that it "never got put in the computer or something." Furthermore, he testified that when he performed community service work, he didn't know that he needed to record the hours worked. Finally, when the defendant moved, he lost the community service paperwork, leaving him unable to turn it in until just before this hearing.

When asked on cross-examination about prior arrests, the defendant admitted to two prior convictions for marijuana possession, a theft conviction, and a charge of assault and vandalism. However, the defendant disputed a 2004 arrest for possession of crack cocaine, a simple possession charge, and another assault charge on his record.

The trial court judge found that the defendant had violated the terms of his community corrections "in a substantial way" and revoked the sentence. However, because of the dispute regarding the defendant's criminal history, the judge ordered a criminal records investigation before re-sentencing.

The sentencing hearing was held on March 12, 2007, in the Madison County Circuit Court. The State offered no proof except the criminal history report requested by the judge at the probation violation hearing, which detailed the following offenses:

> November 22, 2005: The defendant pleaded guilty to driving on a revoked license 9th offense and violation of registration law and was sentenced to 11 months and 29 days concurrent with 05-207 in 05-122 Madison County Circuit Court.

> July 6, 2004: The defendant pleaded guilty to simple possession of crack cocaine and was sentenced to 11 months and 29 days in 2004M-1394 Jackson City Court.

> June 17, 2002: The defendant pleaded guilty to public intoxication and was sentenced to 30 days in 02-23 Madison County Circuit Court.

> November 4, 2001: The defendant pleaded guilty to possession of marijuana, possession of drug paraphernalia, and criminal impersonation and was sentenced to 11 months and 29 days in 01-452 Madison County Circuit Court.

-3-

September 1, 2001: The defendant pleaded guilty to theft and possession of drug paraphernalia and was sentenced to 11 months and 29 days in 99M-2201 Jackson City Court.

May 2, 2000: The defendant pleaded guilty to driving on a revoked license 4th Offense and was sentenced to 11 months and 29 days in 00-29 Madison County Circuit Court.

March 17, 2000: The defendant pleaded guilty to driving on a revoked license 4th offense and criminal impersonation and was sentenced to 11 months and 29 days to serve 90 days in 2000M-779 Jackson City Court.

September 9, 1999: The defendant pleaded guilty to assault (2 counts), vandalism, and driving on a revoked license and was sentenced to 11 months and 29 days to serve 6 months in 99M-2206 & 99M-2218 Jackson City Court.

The defendant testified that the present case was his first felony conviction, spoke of his eight years of military service, and spoke of his recent health problems. On cross examination, he admitted to prior drug possession convictions but denied having a drug problem.

The court sentenced the defendant as a Range I offender and weighed the enhancement and mitigating factors of the case. The court placed "great weight" upon the defendant's previous criminal history and history of unwillingness to comply with a sentence releasing him into the community. The court accepted the defendant's military service as a mitigating factor. After weighing the factors, the defendant was re-sentenced to serve six years in the Department of Correction for each count, to be served concurrently. The defendant received credit for time served from July 18, 2005 through December 8, 2006, when the first violation warrant was issued.

The defendant filed a timely appeal on March 28, 2007, and argues that the trial court abused its discretion in revoking his placement in community corrections, ordering him to serve his sentence in the Department of Correction, and failing to give more weight to his poor health and military service as mitigating factors.

The decision to revoke a community corrections sentence or probation rests within the sound discretion of the trial court and will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation has occurred. *State v. Harkins*, 811 S.W. 2d 79, 82-83 (Tenn. 1991) (applying the probation revocation procedures and principles contained in Tennessee Code Annotated section 40-35-311 to the revocation of a community corrections placement based upon "the similar nature of a community corrections sentence and a sentence of probation"). The trial court is required only to find that the violation of

probation or community corrections occurred by a preponderance of the evidence. *See* T.C.A. § 40-35-311(e) (2006); *see also id.* § 40-36-106(e) (3) (B). In reviewing the trial court's findings, this court is obligated to examine the record and determine whether the trial court exercised a conscientious judgment rather than an arbitrary one. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

If the evidence is sufficient, the trial court may, within its discretionary authority, revoke the community corrections sentence and require the defendant to serve his sentence in confinement. T.C.A. § 40-36-106(e) (4). Upon finding a probation violation, the trial court is vested with the statutory authority to "revoke probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered." *Id.* § 40-35-311(e). Furthermore, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." *Id.* § 40-35-310. The trial judge retains the discretionary authority to order the defendant to serve the original sentence. *See State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995). In the alternative, when the probationary program is a community corrections placement,

> the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration. The resentencing shall be conducted in compliance with § 40-35-210.

T.C.A. § 40-36-106(4). The trial court may impose a sentence greater than the original sentence without offending the double jeopardy provisions of either the United States Constitution or Tennessee Constitution. *See State v. Griffith*, 787 S.W.2d 340, 341-42 (Tenn. 1990). Nonetheless, before ordering a new sentence, the trial court must conduct a sentencing hearing pursuant to the principles of sentencing. *See State v. Cooper*, 977 S.W.2d 130, 132 (Tenn. Crim. App. 1998). Furthermore, the trial court must state on the record its reasons for imposing a new sentence and "shall include specific findings of fact upon which application of the sentencing principles was based." T.C.A. § 40-35-209(c); *State v. James Austin Patterson,* No. 02C01-9308-CC-00174, slip op. at 3 (Tenn. Crim. App., Jackson, May 25, 1994); *see generally State v. Ervin,* 939 S.W.2d 581 (Tenn. Crim. App. 1996), *perm. app. denied* (Tenn. 1997).[1]

---

[1] We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. However, the Defendant's crimes in this case occurred prior to that date, and the Defendant did not elect to be sentenced under the provisions of the act by executing a waiver of his *ex post facto* protections. *See* 2005 Tenn. Pub. Acts ch. 353 § 18. However, although the defendant did not file a waiver of his *ex post facto* protections at the time of his guilty plea, he did execute a "Waiver of Jury Determination of Enhancement Factors in Determining Sentence." We also note that the defendant has not challenged his sentence in light of the United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296 (2004), or the Sixth Amendment of the United States Constitution. The signed waiver, coupled with the lack of any claim of Sixth Amendment issues by the defendant, leaves us to consider the re-sentencing hearing as compliant with the Sixth Amendment.

The record reflects that the trial court did not abuse its discretion in determining that a violation occurred. We know that "[o]nly one basis for revocation is necessary." *State v. Alonzo Chatman*, E2000-03123-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, Oct. 5, 2001). The defendant himself admitted at the probation violation hearing that he had garnered new criminal charges, had failed to report those new charges, had failed to report weekly, and had failed to complete his community service. We discern no arbitrary action in the trial court's determination. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (holding that a defendant's concession of an act constituting violation of probation constitutes substantial evidence of violation, and trial court's revocation based thereon is not abuse of discretion).

The appellant also asserts that his re-sentencing to six years in the Department of Correction, with credit for time served, is excessive because the court failed to give more weight to his military service and his poor health as mitigating factors. The State submits that the trial court did consider these proposed mitigating factors but any weight attributable to these factors was outweighed by enhancement factors.

When a defendant challenges the sentencing decision of the trial court, this court generally conducts a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003). This presumption, however, is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the defendant. *Id.* If the review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence "even if we would have preferred a different result." *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby,* 823 S.W.2d at 169.

In making its sentencing determination in the present case, the trial court, at the conclusion of the sentencing hearing, was obliged to determine the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the guilty plea and sentencing hearings, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant made in his behalf about sentencing, and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-210(a), (b); -103(5) (2003); *State v. Holland,* 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

Moreover, the trial court shall impose a specific sentence within the appropriate range of punishment depending upon whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. T.C.A. § 40-35-210(b) (2003). In so doing, the court is required to consider the sentencing guidelines:

The presumptive sentence for a Class B, C, D and E felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors. The presumptive sentence for a Class A felony shall be the midpoint of the range if there are no enhancement or mitigating factors.

*Id.* § 40-35-210(6)(c). The sentence length should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in sections 40-35-113 and 40-35-114. *See id.* § 40-35-210(6)(d-f). The trial court must also consider enhancement factors listed in Code section 40-35-114 if appropriate for the offense and if not already an essential element of the offense. *See id.* § 40-35-114. In addition, the sentence length within the range should be consistent with the purposes and principles of the Sentencing Reform Act of 1989. *Id.* § 40-35-210(d).

The defendant is a Range I, standard offender, and according to the record, the trial court followed the correct procedures and considered the appropriate sentencing principles, facts, and circumstances. The court heard the evidence regarding the crime and the defendant's plea agreement. The court also found that two enhancement factors applied: the defendant's history of unwillingness to comply with a sentence involving release into the community, *see id.* § 40-35-114(9), and his history of criminal convictions and conduct, *see id.* § 40-35-114(2). These factors are supported in the record, and the sentence, as imposed, is consistent with the purposes and principles of the Sentencing Reform Act of 1989. *See id.* § 40-35-210(d).

Given the record before us and the trial court's findings of fact, we affirm the defendant's sentence of six years served in the Department of Correction.

_____
JAMES CURWOOD WITT JR., JUDGE