**STATE of Tennessee, Appellee,**

v.

**William Earl HOLLAND, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

May 5, 1993.

---

Gary F. Antrican, Dist. Public Defender, Somerville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Amy L. Tarkington, Asst. Atty. Gen., Nashville, and Elizabeth T. Rice, Dist. Atty. Gen., Somerville, for appellee.

## OPINION

WHITE, Judge.

This is an appeal as of right filed pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure by William Earl Holland, the appellant. Holland was convicted by a Tipton County jury of aggravated rape and especially aggravated burglary.[1] The trial judge sentenced Holland to twenty-five years as a range one offender on the aggravated rape conviction and to twenty years as a range two multiple offender on the aggravated burglary conviction and ordered the sentences served consecutively.

Two issues are raised on this appeal. First, Holland questions the sufficiency of the evidence to convict him on the charge of especially aggravated burglary. Second, Holland challenges the trial court's order of consecutive sentences. We are compelled to modify the verdict on the especially aggravated burglary charge in accordance with Tennessee Code Annotated Section 39–14–404(d) and consequently to modify the sentence and fine on that count. All other aspects of the trial court's rulings are affirmed.

In April, 1991, the victim, a school teacher, was home overseeing some home improvements. Holland appeared in her yard with some painters. The victim believed he was working with them.[2] Throughout the day as the victim worked on various projects, Hol-

---

1. The jury imposed $50,000.00 fines on each.

2. Both of the workmen hired by the victim testified that Holland asked them if they needed help with the work. Although they told him they did not, Holland remained around the home, performed some yard work, and later moved some furniture.

land appeared to help her. At times he was inside her home, as were several other workers. In the early evening, Holland entered the home with Fletcher Dickerson, one of the hired workers. The victim paid Dickerson for his work, and he and Holland left the home. A few minutes later, Holland knocked on the door. When the victim answered the door, Holland said he needed to retrieve Dickerson's truck keys.[3] The victim gave him the truck keys and locked the door behind him.

Shortly thereafter, Holland knocked again on the victim's door. According to the victim, she went to the door, opened it, and Holland walked inside.[4] After Holland came inside the house, he told the victim he wanted to watch television with her. She told him she had school work to do and asked him to leave.

Holland became angry, cursed the victim, grabbed her right arm, and dragged her through the house to the bedroom. He beat her about the face and head, knocked her glasses and wig off, and began choking her. The victim began praying loudly. Holland then knocked her head into the door facing, began trying to remove her slacks, and threatened to kill her if she did not stop praying.

Eventually Holland removed the victim's pants, pantyhose, and underwear, pushed her onto the bedroom floor, and undressed himself. He penetrated the victim vaginally[5] but finally stopped as the victim prayed louder. After the penetration, Holland brought the victim toilet paper, instructed her to clean herself, dressed himself, and left.

The victim locked the door, called 911, her priest, and her mother. She was eventually taken to the hospital where she remained overnight.[6] Medical personnel and law enforcement observed bruises on the victim's face, neck, upper arms, abdomen, and thighs and a "huge knot" on her forehead. While attempting to maintain control, the victim was obviously in a great deal of pain when law enforcement arrived and was dizzy. Three weeks after the attack the victim returned to her teaching duties. She testified that, at the time of trial, she continued to suffer from serious physical problems and stress related to the rape.

Two of the workmen hired by the victim testified that they were approached by Holland who was looking for work. Joseph Winberry told Holland he did not need any other workers. Later when he saw Holland working in the yard, he commented that Holland had gotten a job. Holland told Winberry that he was not going to charge the victim for his work.

Fletcher Dickerson was also approached by Holland looking for work. He advised Holland that he did not need any help. Although he saw Holland working at the house, Dickerson did not hire him.[7] When Dickerson left, he asked Holland to go and get his truck keys. After the rape, the victim telephoned Dickerson and asked for Holland's full name. She told Dickerson not to hire Holland because he had just raped her.

3. Dickerson confirmed that he sent Holland into the home to retrieve the truck keys.

4. The victim testified that she let Holland in because she "had no idea that he had any criminal intent." She believed that Dickerson was still in the driveway and that Holland was there in conjunction with the work. She further stated "if I had known what he had planned, I would not have let him in the door."

5. While Holland claims an overall defense of identity, he also contends that the evidence did not establish a penetration. The victim, however, testified that Holland penetrated her.

6. Witnesses from the Covington Police Department and Baptist Hospital confirmed the victim's testimony as to the brutal nature of the rape. Investigator Ricky Chandler went to the victim's home. The victim had a knot above her right eye, bruises on her body, and rumpled clothing. Elizabeth Manning, a registered nurse, noted that the victim appeared with bruises on her upper body, face and thighs. Raymond DePriest, Tennessee Bureau of Investigation, found spermatozoa on the victim's panties. Based on tests, he concluded that Holland could not be excluded as the supplier of the fluid given his blood and antigen type.

7. On cross-examination Dickerson testified that the victim told him she hired Holland. The victim denied this statement.

Holland denied the charges.[8] He testified that the victim hired him, first, to do yard work, and eventually, to clean the carpet, and paid him for the work he performed. Holland admitted that he returned to the victim's home to retrieve Dickerson's truck keys, but claimed that he left before Dickerson, visited the victim's neighbor, then went to the store and returned to the neighbor's. He denied returning to the victim's home at any time after retrieving the truck keys.

The victim's neighbor, Buster Cleaves, confirmed that Holland had visited him two times on the day of the attack. His memory was that the first visit was about two or three o'clock in the afternoon and the second visit was at "gray dark." He did not know where Holland went when he left.

Holland's mother testified that her son was living with her at the time of the attack. She remembered that on the day of the attack Holland came home at five minutes after seven o'clock, ate dinner, and went to bed.

Based upon this evidence the jury, who had ample opportunity to view the witnesses during their testimony, credited the testimony of the victim, discredited that of Holland, and returned guilty verdicts on both counts of the indictment. The trial judge approved the verdicts.

At sentencing, the court reviewed the presentence report and the enhancement and mitigating factors filed by both parties and heard the argument of counsel. The court found that the enhancement factors[9] greatly outweighed the mitigating factors[10] and sentenced Holland to twenty-five years, as a standard offender on the aggravated rape and to twenty years, as a multiple offender on the especially aggravated burglary. The

court then ordered that the sentences be served consecutively since the defendant had an extensive criminal record, had no hesitation about committing the crime, and had been released from the penitentiary days before this incident.

## I. Sufficiency of the Evidence on the Especially Aggravated Burglary Conviction

■ A jury verdict approved by the trial judge resolves all conflicts in favor of the state, removes the presumption of innocence, and replaces it with a presumption of guilt. *State v. Williams,* 657 S.W.2d 405, 410 (Tenn. 1983). Thus, on appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). This court views the evidence to determine whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt and sets aside the conviction only if the evidence is not sufficient to support the trier's finding. Tenn.R.App.P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Here it is Holland's contention that a reasonable trier of fact could not have found him guilty of the offense of especially aggravated burglary. Holland contends specifically that the proof was insufficient to establish that he entered the victim's home without her effective consent.

### A. Entry without Effective Consent

■ Especially aggravated burglary under our law is a burglary in which the victim

---

**8.** Investigator Chandler testified that Holland told him, after being arrested and given his *Miranda* warnings: "I'm not going to tell you I did it. I'm not going to tell you I didn't do it. You're going to have to work to put me in jail. I'm not going to help you put me in jail." Holland denied the statement.

**9.** The state claimed that the following enhancement factors applied: (1) previous history of criminal convictions in addition to those necessary to establish the appropriate range; (2) victim treated with exceptional cruelty; (3) offense committed to gratify defendant's pleasure or ex-

citement; (4) previous history of unwillingness to comply with conditions of release; and (5) no hesitation about committing a crime when the risk to human life was high.

**10.** The defense claimed the following mitigating factors: (1) victim did not suffer serious bodily injury; (2) defendant lacked ability to judge his actions due to mental ability and educational background; and (3) defendant has previously been sentenced to more extreme sentences than others and had developed an attitude toward society and the court system.

suffers serious bodily injury. Tenn.Code Ann. § 39–14–404 (1991 Repl.). A burglary is committed when one "without the effective consent of the property owner . . . enters" with the intent to commit a felony.[11] Tenn. Code Ann. § 39–14–402(a) (1991 Repl.). Here Holland argues that he cannot be guilty of the offense of especially aggravated burglary because his entry into the victim's home was not proven to be "without the effective consent of the property owner," *id.*, was not for the purpose of committing a felony, *id.*, and did not cause serious bodily injury to the victim. Tenn.Code Ann. § 39–14–404(a) (1991 Repl.).

Effective consent is "assent in fact, whether express or apparent, including assent by one legally authorized to act for another. Consent is not effective when: (A) Induced by deception or coercion. . . ." Tenn.Code Ann. § 39–11–106(a)(9) (1991 Repl.). Holland argues that the victim consented to his entry into her home by opening the door once he knocked. This argument ignores the statutory definition of effective consent.

■ Before the victim's opening of the door for Holland to enter can be deemed "effective consent," it must have occurred without being induced by deception or coercion. Deception, under our statutory definition, occurs when one "creates or reinforces a false impression by words or conduct, including false impressions of fact . . . or other state of mind" or "[f]ails to correct a false impression of law or fact the persons knows to be false and . . . created; or . . . [k]nows is likely to influence another." Tenn.Code Ann. § 39–11–106(a)(6) (1991 Repl.). Thus, if the victim opened the door either because of a false impression created, reinforced, or not corrected by Holland, she did not consent to Holland's entry.

The proof on this issue is uncontroverted.[12] The victim testified that Holland came into her yard after lunch with the painters and Fletcher Dickerson. The victim believed Holland was working with Dickerson. She observed him working around her home throughout the day. While the other workers left around five o'clock, Dickerson and Holland worked until after seven o'clock. When Dickerson came into the victim's home to be paid, Holland came in with him. They left together. In just a few moments, Holland returned for Dickerson's car keys. The victim let him in the house, gave him the keys, showed him to the door, and locked the door behind him. The victim thought Holland left. When he arrived a second time, she let him in because she "thought Mr. Dickerson was still in the driveway and wanted something he had forgotten."

Holland by his words and deeds created and reinforced the false impression that he was legitimately on the victim's premises working for those hired by her. During the course of the day, Holland entered the victim's home several times by means of that false impression. When he arrived and knocked on her door the last time he took advantage of the false impression he had created previously. But for the false impression created and reinforced by Holland, the victim would not have consented to his entry.

Holland, therefore, relied upon the false impression he had created and reinforced to get inside the victim's home. Once inside, he accomplished the felonious deed which prompted his entry. Thus, having peaceably gained entry by deception, Holland's entry into the victim's home cannot be deemed with "effective consent." In crediting the victim's version of the facts, the jury has found, as a reasonable factfinder could, that the state proved this element of the crime beyond a

11. At common law, burglary required proof of a breaking and an entry. The breaking element could be either actual or constructive. A constructive break occurred when entry was gained by either fraud or threat. A criminal law primer uses this example: "One may also constructively break into a house by getting in under false pretenses . . . as, for instance, where he pretends he has business with the owner of the house . . . ."

Justin Miller, *Criminal Law*, § 108, at 333 (1934). Our new statute has merged the breaking and entry requirement into one element: "entry without effective consent." Our analysis, however, is consistent with the common-law concept of a constructive breaking.

12. Since Holland testified he did not return to the victim's home, he offered no proof on this issue.

reasonable doubt.[13]

## B. Entry with Intent to Commit a Felony

■ Secondly, Holland argues that the proof is insufficient to establish that he entered the victim's home with the intent to commit a felony. Tenn.Code Ann. § 39–14–402(a)(1) (1991 Repl.). He argues that the proof establishes only that he entered the home with the intent to watch television. While the victim testified that, after gaining entry, Holland announced that he wanted to watch television with her, his declared purpose is but one factor in ascertaining whether his entry was with felonious intent. "One's actions are circumstantial evidence of his intent." *State v. Barker,* 642 S.W.2d 735, 737 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1982). In addition, the circumstances surrounding the entry must also be viewed in determining intent.[14] Charles E. Torcia, 4 *Wharton's Criminal Evidence,* § 5 (14th ed. 1985).

■ Holland's actions upon entering the home establish that his intent was not as benign as he claims. After the victim asked Holland to leave, he grabbed her by the arm and dragged her down the hallway to the bedroom. He began beating and choking her, and eventually, brutally raped her. This is hardly the normal reaction of a person denied the opportunity to watch television. Holland's comments during the rape that he intended to get the victim pregnant and that he knew she really liked him and wanted to have sex with him, endorse a finding of felonious intent by demonstrating that he had considered the act before gaining entry. Holland's actions after entering the residence, along with his dishonesty about being there at all, establish clearly that his intent was not to watch television or complete an errand but rather to perpetrate a gruesome, brutal criminal act upon this innocent victim.

■ After weighing the credibility of the witnesses, the jury determined that the proof was sufficient to establish Holland's felonious intent. Criminal intent is a matter to be determined by the jury after a consideration of all the facts and circumstances. Here the jury concluded that Holland entered the house for doing just what he accomplished: attacking and raping the victim. Therefore, Holland's argument that the evidence was insufficient to establish this element of the crime is without merit.

## C. Serious Bodily Injury

■ Finally, Holland argues that the proof is insufficient to establish that the victim suffered serious bodily injury. Serious bodily injury means "bodily injury [15] which involves ... [e]xtreme physical pain...."[16] Tenn.Code Ann. § 39–11–106(a)(33)(C) (1991 Repl.). In this case the victim, the responding officer, and two health practitioners described the victim's injuries. The officer described a "huge knot" on the victim's head, obviously caused by Holland when he rammed her head against the door facing. The head injury was so severe that it first led the victim and others to believe she had suffered a fractured skull. The officer observed the victim moments after the rape and noted that, although she was attempting to disguise it, she was in a great deal of pain. She clinched her teeth to enable conversation. Her dizziness was so great that the officer requested that she sit down to await the emergency personnel. The evidence does not preponderate against the jury's

---

13. Because of our analysis it is unnecessary for us to address the applicability of Tennessee Code Annotated Section 39–14–402(a)(1) pertaining to entering a portion of the habitation without effective consent.

14. "Intent may, and necessarily must in most cases, be inferred from the facts; as from the fact that a felony is actually committed or attempted...." Justin Miller, *Criminal Law* § 108, at 338 (1934).

15. "Bodily injury" includes bruises and abrasions, which the victim suffered, as well as physi-

cal pain. Tenn.Code Ann. § 39–11–106(a)(2) (1991 Repl.).

16. Other definitions of serious bodily injury, which seem irrelevant here, are bodily injury involving "[a] substantial risk of death," "[p]rotracted unconsciousness," "[p]rotracted or obvious disfigurement," or "[p]rotracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty." Tenn.Code Ann. § 39–11–106(a)(33) (1991 Repl.).

finding that the victim suffered bodily injury involving "[e]xtreme physical pain." *Id.*

■ We, therefore, find ample evidence to support the jury finding of each of the elements of especially aggravated burglary. However, although neither side has raised the issue, we are compelled by statute to modify the especially aggravated burglary conviction to one of aggravated burglary. Tennessee Code Annotated Section 39–14–404(d) provides that "[a]cts which constitute an offense under this section may be prosecuted under this section or any other applicable section, but not both." Tenn.Code Ann. § 39–14–404(d) (1991 Repl.) (emphasis added). Subsection (d) prohibits using the same act to prosecute for especially aggravated burglary and another offense. By virtue of the prosecution and conviction of Holland for aggravated rape, the statute prohibits his prosecution and conviction for especially aggravated burglary. *See State v. Ronnie Dale Oller,* 851 S.W.2d 841 (Tenn.Crim.App., 1992).

Accordingly, Holland's conviction for especially aggravated burglary is modified to a conviction for aggravated burglary, a class C felony. Tenn.Code Ann. § 39–14–403 (1991 Repl.). Because we have sustained the trial judge's findings regarding sentencing, we impose a ten year sentence and modify the fine to the maximum under the class, $10,000. Tenn.Code Ann. §§ 40–35–111(b)(3) & – 112(b)(3) (1990 Repl.). Our sua sponte modification of the conviction, sentence, and fine is necessary, we believe, to do substantial justice in this case. Tenn.R.Crim.P. 52(b); *State v. Maynard,* 629 S.W.2d 911, 912 (Tenn.Crim.App.1981).

## II. Consecutive Sentencing

Holland challenges the trial court's application of Tennessee Code Annotated Section 40–35–115 and claims that his sentences violate double jeopardy since the trial court used his criminal record "at four steps to enhance his punishment." [17] The state responds that Holland's prior record is exten-

sive enough to justify the enhancement, the range, and the consecutive sentences.

■ On appeal of a sentencing order, it is our obligation "to conduct a de novo review of the record ... with a presumption that the determinations made by the [trial] court ... are correct." Tenn.Code Ann. § 40–35–401(d) (1991 Repl.). In conducting our review we are obliged to consider the evidence, the presentence report, sentencing principles, counsel's argument, the nature and character of the offense, the mitigating and enhancement factors, defendant's statements, if any, and his potential for rehabilitation. *State v. Thomas,* 755 S.W.2d 838, 844 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1988). While the record must support a finding that the trial judge considered the relevant facts and principles, the burden of showing that the sentence is improper rests with the defendant. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991).

■ Here the record clearly supports the trial judge's findings. First, we have considered the evidence at trial. Given the jury verdict, we are mindful of the fact that the defendant committed this offense less than two weeks after he had been released from the penitentiary and that he conjured up a story in an effort to discredit the victim and disinterested witnesses. Our statutory sentencing principles support his sentences. Confinement is surely necessary to protect society. Defendant has demonstrated by his conduct that he is a menace to society. Less restrictive measures have failed with him. He has flaunted his disrespect for the law by experiencing two arrests within days of his release from the state penitentiary. Additionally, confinement is necessary in this case due to the very serious nature of the offense. Defendant acted inhumanely leaving permanent emotional scars on an innocent victim. A lesser sentence would depreciate the egregiousness of defendant's conduct.

■ Likewise, the nature and character of the offenses support the trial judge's

---

**17.** Holland claims that his record was used first, to sentence him to the maximum sentence on the aggravated rape conviction; second, to sentence him to the maximum sentence on the especially

aggravated burglary conviction; third, to sentence him as a multiple offender on the aggravated burglary conviction; and fourth, to order his two sentences served consecutively.

decision. Both are serious crimes with potentially grave consequences. The trial judge accurately found that the statutory enhancement factors far outweighed the mitigating factors. We agree that the evidence supports a finding of enhancement factors (1), (5), (7), (8), and (10) under Tennessee Code Annotated Section 40-35-114.[18] Further, we do not find evidence to establish any of the claimed mitigating factors.[19] Finally, nothing in the defendant's statement, his history, or any aspect of this case lead us to believe that stronger consideration should have been given to his prospects of rehabilitation.

Thus, the trial court was justified in finding overwhelming reasons to enhance defendant's sentences and no reasons to reduce them. Sentencing defendant to the maximum sentence within the range was appropriate on the charges.

Next, we must consider whether the court was justified in finding that the defendant should be sentenced as a multiple offender on the aggravated burglary charge. Aggravated burglary is a class C felony. To justify the multiple offender designation, the record must support a finding of "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes...." Tenn.Code Ann. § 40-35-106(a)(1) (1990 Repl.). Defendant

has sufficient convictions to establish this classification.[20]

Having sustained the use of defendant's criminal record to enhance his sentence within the range, and to enhance the range on his aggravated burglary conviction, we must now consider the defendant's claim that it was error to order consecutive sentences. The Criminal Sentencing Reform Act of 1989 codified our Supreme Court's two most significant pronouncements on the issue of consecutive sentences. Tenn.Code Ann. § 40-35-115 (1990 Repl.). While the sentencing commission cautioned judges against the routine imposition of consecutive sentences, it sanctioned their use in appropriate cases when the aggregate term is "reasonably related to the severity of the offenses involved." Sentencing Commission Comments to Tenn.Code Ann. § 40-35-115 (1990 Repl.). This is an appropriate case.

Statutory authority exists to sentence a defendant convicted of more than one offense to consecutive sentences when the court finds "by a preponderance of the evidence that ... [t]he defendant is an offender whose record of criminal activity is extensive." Tenn.Code Ann. § 40-35-115(b)(2) (1990 Repl.). While other reasons may exist, the trial court ordered consecutive sentences on the basis of defendant's extensive criminal record.[21] Defendant's argument is that the trial court "double-dipped" by using his ex-

---

18. We are mindful that enhancement factor seven (7) may be seen as an essential part of the crime of aggravated rape in some circumstances. Here, however, the proof is that the defendant raped the victim because he wanted to get her pregnant and because he thought she liked him and wanted to have sex with him. Under these circumstances we believe that the finding of factor seven (7) can be sustained.

Given the physical battering of the victim, we believe there is adequate proof to sustain a finding that she was treated with exceptional cruelty and that the defendant had no hesitation to commit the offense though the risk to human life was great. The proof was that the victim was beaten and bruised all over her body. She also sustained such a serious blow to the head that a fractured skull was suspected initially.

19. The jury's finding of especially aggravated burglary, which we have sustained factually but modified on statutory grounds, establishes that

the victim suffered serious bodily injury. Therefore, we do not find absence of serious bodily injury as claimed as a mitigating factor. Additionally, we find no competent proof that the defendant lacked the appropriate judgment to know that rape and physical battering of a woman against her will was wrong. Defendant's claim that his attitude, allegedly the fault of the court system, is a mitigating factor is completely void of any merit.

20. Defendant's previous record includes four petit larcenies and three grand larcenies, all but one of which appears to have been reduced to misdemeanors; two third degree burglaries; one rape; one jail escape; and several misdemeanors, including breach of the peace, criminal trespassing, and assault.

21. While the judge listed two other reasons for his decision to run these sentences consecutive, we acknowledge that they are not appropriate considerations under our statutory guidelines.

tensive record to enhance within the range, up the range, and order the sentences served consecutively.

As the state notes, defendant simply has sufficient prior record to justify maximum sentences within the range, range adjustment, and consecutive sentences. In addition to the convictions necessary to sustain the finding of multiple offender, defendant has, a minimum, of one class B felony, one class D felony, and one class E felony. He also has eleven additional offenses, most of which originated as felonies but were disposed of as misdemeanors. Those convictions are sufficient to support the finding of extensive criminal activity and the trial court's consecutive sentencing order.

For the reasons set forth above, we affirm the judgment and sentence on the aggravated rape conviction. We modify the judgment on the especially aggravated burglary conviction to one of aggravated burglary and find sufficient evidence to support that conviction, for which the defendant is sentenced as a multiple offender to a sentence of ten years. We modify the jury's fine on that count to the maximum of $10,000. The sentences are to run consecutively. The trial court is hereby ordered to modify its judgment accordingly. All other aspects of the court's findings are affirmed.

DWYER and TIPTON, JJ., concur.