IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2008

**STATE OF TENNESSEE v. SARAH MICHELLE VINSON**

**Appeal from the Circuit Court for Lincoln County**
No. S0600167    Robert Crigler, Judge

_____

**No. M2007-02346-CCA-R3-CD - Filed August 1, 2008**
_____

The defendant, Sarah Michelle Vinson, appeals her Lincoln County Circuit Court convictions of two counts of forgery. In this appeal, she contends that she was improperly denied alternative sentencing and that her sentences are excessive. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Sarah Michelle Vinson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Ann L. Filer and Hollyn Hewgley, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On January 23, 2007, the defendant was indicted by the Lincoln County Grand Jury on four counts of forgery. On April 24, 2007, the defendant entered guilty pleas to two of the forgery counts, and the other two counts were dismissed.

At the guilty plea hearing, the following fact recitation was presented by the State:

[O]n November 20th, 2006, [the defendant] came into the clerk's office in the morning at about 8:30 to 9 a.m. and was requesting to know where Judge Russell was on that day to get some papers signed. After looking at the judge's calender it appeared that he might be in Bedford County. Ms. Corder called [the] Bedford Clerk's office to inquire if he was there and they informed her no. She informed [the defendant] the judge was not in court in Bedford County and [the

defendant] requested his office number. After receiving it [the defendant] immediately left.

At approximately 1 p.m. on the same day [the defendant] came back to the office with the same papers as the morning, which was two orders. They purported to have Judge Russell's signature. She was asked how did you get these signed and her response was "I took them to the courthouse" implying Bedford County. They called him down and [he] signed them. These orders were entered. The orders were to get court funds for the defendant in the amount of $3,007.24 [and an order granting the defendant's emancipation].

According to Judge Russell, on Friday, November 17, 2006, he was on the bench in Shelbyville handling a criminal docket. [The defendant's] attorney on the juvenile matter came in and presented him with an order for disbursement of funds being held by the circuit court clerk in Lincoln County. He signed the order to emancipate her. This is the only one he signed.

On Monday morning, November 20th, shortly after 9 a.m. he returned a telephone message from Judy Rowe, circuit court clerk's office here in Fayetteville, who referred [him] to Ms. Corder, who indicated that Ms. Corder had declined to sign the orders that he had signed but didn't specify why except to indicate that there was an error.

She asked if [the defendant] brought the order to him in Shelbyville if he would sign them. He advised her that he would not do that. The matter should simply be placed on his next docket in Shelbyville, which was scheduled for December 13th, 2006.

He further indicated that the matter would simply need to be on [the] December 13th docket.

He didn't hear anything further from the clerk's office over here until he was called in late afternoon to report a new order for disbursement had been presented to this office by [the defendant] and the signature on the order appeared to be rather iffy. It actually appeared to be a tracing.

It was also noticed that the order was not dated, which is contrary to his usual practice.

He confirmed with the clerk's office here that he had not signed a follow-up order. In fact . . . he had referred the matter to the December 13th docket. He asked that copies of the orders be FAXed to him, which was done, and he recognized immediately that it was a forgery.

The defendant spoke to Detective Adam Eubanks of the Fayetteville Police Department. At that time [the defendant] admitted to passing these instruments but claimed that someone else had actually forged the judge's signature. There are two different orders. This happened here in Lincoln County as to the passing.

At the sentencing hearing, the State introduced the presentence report and two certified copies of the defendant's two prior convictions for passing worthless checks.

Jerry Grohowski testified that he was a probation and parole officer who prepared the presentence report. Mr. Grohowski confirmed that the defendant was currently enrolled at Motlow College and had a work history that included "Hugs Not Drugs," Whitt's, Subway, and Krystal.

The defendant testified that she was 17 years old at the time of the hearing. She had asked for her case to be transferred from juvenile court to circuit court so she could post bond in order to be out of juvenile detention for Thanksgiving. The defendant was then employed at "Hugs Not Drugs," a non-profit business that serviced vending machines. Prior to this job, she worked at Subway and Whitt's simultaneously for two months, at Krystal for three or four months, and at Sonic for three months. The defendant testified that she was living on her own and paying her own bills. The defendant testified that she moved out of her parents' home because of an abusive family situation.

The trial court sentenced the defendant to two years on each count of forgery, to be served concurrently, and ordered the defendant to serve 30 days in jail "day-for-day at 100% as a condition of her probation." The defendant filed a timely appeal and alleges that the trial court erred in denying alternative sentencing, and in imposing excessive sentences.

When a defendant challenges the length and manner of service of a sentence, this court generally conducts a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the defendant. *Id.* If the review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the

sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination in the present case, the trial court, at the conclusion of the sentencing hearing, was obliged to determine the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the sentencing hearings, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant made in his behalf about sentencing, and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-210(b); -103(5) (2006); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

## A. Denial of Alternative Sentencing

The defendant first alleges that the trial court erred in sentencing her to serve 30 days of her sentence in confinement and that, instead, the court should have ordered an entirely suspended sentence.

As our supreme court recently recognized, "the Sentencing Act now provides that '[a] defendant shall be eligible for probation under the provisions of this chapter, if the sentence actually imposed upon the defendant is ten (10) years or less.'" *State v. Stacy Joe Carter*, ___ S.W.3d ___, No. M2005-02784-SC-R11-CD, slip op. at 12 (Tenn. 2008) (quoting T.C.A. § 40-35-303(a) (2006)). Under this revision, defendants no longer enjoy a statutory presumption of favorable candidacy for alternative sentencing. *See* T.C.A. § 40-35-102(6) (providing that those defendants who meet certain statutory prerequisites "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline."). The defendant is, accordingly, eligible for, but not entitled to a presumption in favor of, alternative sentencing. *See id.*

"[T]he burden of establishing suitability for probation rests with the defendant." *Id.* § 40-35-303(b). This burden includes demonstrating that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956)), *overruled on other grounds by Hooper*, 29 S.W.3d at 9-10.

In this case, the court awarded the defendant an alternative sentence of split confinement: 30 days in jail with the remainder of the two-year sentence to be served on probation. *See State v. Kenneth Jordan*, No. M2002-01010-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Nashville, May 8, 2003) ("A sentence of split confinement, as ordered here, qualifies as an alternative sentence."); *State v. Adam Short*, No. 03C01-9703-CR-00090, slip op. at 3 (Tenn. Crim. App., Knoxville, Jan. 28, 1998) (providing that the "benefit the defendant enjoyed in being presumed a suitable candidate for alternative sentencing had been depleted" by his receiving an alternative sentence of split confinement); *see also State v. Fields*, 40 S.W.3d 435 (Tenn. 2001) (observing that an alternative sentence is any sentence that does not involve total confinement). Furthermore, the

defendant has failed to show how a sentence of full probation would serve the ends of justice and the best interest of the public and the defendant. The trial court did not err in sentencing the defendant to serve 30 days in confinement.

## B. Length of Sentence

The defendant next challenges the length of her sentences. The defendant pleaded guilty to two counts of forgery, a Class E felony, which carries a sentence range of one to two years. *See* T.C.A. §§ 39-14-114, 40-35-112(a) (2006). The trial court found that one enhancement factor applied because the defendant had two prior convictions for passing worthless checks. *See id.* § 40-35-114(1) (providing for sentence enhancement when "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]"). The trial court also found three mitigating factors: that the defendant's conduct did not cause or threaten serious bodily injury; that the defendant lacked substantial judgment because of her youth; and that, pursuant to the "catch-all" factor, she experienced a difficult upbringing. *Id.* § 40-35-113 (1), (6), (13).

The defendant contends that the trial court failed to apply certain mitigating factors and failed to properly weigh other factors. Specifically, the defendant contends that the trial court erred in not applying mitigating factor (11), that the defendant "committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the conduct," and three "catch all" factors; that the defendant's case could not have been transferred from juvenile court without the acquiescence of the defendant, that the defendant had a lawful right to obtain the money at the heart of the forgeries, and that the defendant pursued a college education and enjoyed a favorable work history. *See id.* § 40-35-113 (11), (13).

We agree with the trial court's decision not to apply the alleged mitigating factors in determining sentencing. We are unconvinced that mitigating factor (11) applies because the facts in this case and the defendant's conflicting, post-offense statements support the finding that the defendant acted with knowledge of her actions. The proposed "catch-all" mitigating factors are similarly unconvincing. The decision to transfer a case to circuit court was initiated by the defendant in order to be home for Thanksgiving and is not a mitigating factor. The defendant may ultimately have been due the funds at issue, but by her actions, she tried to dupe the court into a premature payment. Finally, we agree with the trial court's finding that "her education and work, while that is all right, there is nothing exceptionally good or bad about it, I don't think it rises to the level of a mitigating factor."

Finally, we reject the defendant's contention that the trial court failed to give adequate weight to the three applicable mitigating factors. "[T]he 2005 amendments deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *Carter*, ___ S.W.3d ___, slip op. at 9. Moreover, we remind the defendant that the weight given to enhancement and mitigating factors has always been a matter entrusted to the sound discretion of the trial court. *See, e.g.*, *State v. Palmer*, 10 S.W.3d 638, 646 (Tenn. Crim. App. 1999).

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE