# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 7, 2012

## STATE OF TENNESSEE v. MARCUS POPE

**Appeal from the Criminal Court for Shelby County**
No. 11-00886     John T. Fowlkes, Jr., Judge

_____

**No. W2012-00033-CCA-R3-CD  - Filed November 5, 2012**

_____

Appellant, Marcus Pope, was indicted by a Shelby County grand jury for aggravated robbery, aggravated burglary, and employing a firearm during the commission of a dangerous felony. The trial court granted appellant's motion for judgment of acquittal on the charge of employing a firearm during the commission of a dangerous felony, and a jury convicted him of aggravated robbery and aggravated burglary. The trial court sentenced him to concurrent sentences of ten years for aggravated robbery and six years for aggravated burglary. Appellant challenges the sufficiency of the convicting evidence and the length of his sentences. Discerning no reversible error in the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Stephen C. Bush, District Public Defender; and Phyllis Aluko (on appeal) and Dianne Thackery (at trial), Assistant District Public Defenders, Memphis, Tennessee, for the appellant, Marcus Pope.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Muriel Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

This case involves the aggravated robbery and aggravated burglary of a neighborhood "candy man." The State's first witness was Carl Brown, the victim, who testified that he had been selling candy and snacks from his residence to people in his neighborhood for three to four years. He conducted this business because it was approximately a one-mile walk to the nearest store. On the afternoon of August 12, 2010, appellant and an unknown associate of appellant robbed the victim of $300-400 in cash and some merchandise. They struck the victim on the head, tied him up, and sprayed him with mace. The victim identified appellant as one of the assailants. He knew appellant because appellant and the mother of appellant's children had been visiting his residence for over a year and a half.

The victim testified that he invited appellant and appellant's unknown friend into his home on August 12, 2010, so they could purchase merchandise. He invited them inside because he felt comfortable with appellant, and the weather was hot that day. The victim stated that he usually conducted business through an open window of the house because he had been robbed before. He explained that upon entering his home, appellant's associate ran toward the money box used to make change for customers. The victim tried to stop the unknown person by grabbing him and biting his arm, but he was struck on the head with a pistol. The victim then "just laid on down" on the floor. He recalled that he must have lost consciousness for a moment and "woke up begging for [his] life." As the unknown assailant stood over him with the pistol, he believed appellant was "rummaging through [his] house or whatever." After robbing the victim, the assailants tied his hands and feet with telephone cord, and one of them sprayed his face with mace as they left the residence. The victim was able to free himself, exit the house, and summon a passing motorist who called 9-1-1 and "got [him] some help."

On cross-examination, the victim acknowledged he knew appellant by sight but not by name until he inquired of a neighbor. The victim identified appellant as the person who hit him on the head during his struggle with the unknown assailant and again as the person who tied his hands and feet while the unknown assailant held a pistol on him. As both assailants were leaving, the victim heard the unknown assailant say, "Hold up, man, let's go back," and the unknown assailant then sprayed mace in the victim's face.

Timothy Foster, an investigator with the Memphis Police Department, testified that he was the case officer investigating the robbery of Carl Brown. He visited the victim at his residence the day after the robbery, and the victim identified appellant as one of his assailants

from an array of photographs. Based on the victim's positive identification of appellant, Investigator Foster issued a warrant for appellant's arrest.

Following the State's case-in-chief, appellant, through counsel, moved for a judgment of acquittal on Count III of the indictment, employing a firearm during commission of a dangerous felony. As grounds, counsel argued that the firearm was not displayed until after the assailants had gained entry into the victim's home; therefore, the aggravated burglary[1] was not accomplished by use of a firearm. The trial court granted the motion as to Count III.

During appellant's proof, Lovie Pope, appellant's mother, testified that appellant and his two children, along with his siblings Marquita and Marquez, lived with her. Ms. Pope recalled receiving a telephone call from a young lady named Connie advising her that the police were looking for appellant concerning a robbery. Ms. Pope told Connie that appellant had been in his room at her residence all day on the day of the robbery. She then passed the telephone to appellant. She testified that she was so upset and hurt by the telephone call that she did not talk to the prosecutors or the police to tell them appellant was at home with her during the robbery.

On cross-examination, Ms. Pope testified that Connie was a friend of the mother of appellant's children. She further testified that she did not know the victim.

Ms. Pope stated appellant went to sleep in his room with his children about 10:30 p.m. on August 11th, and he was asleep the next morning when she arose. She stated she received the telephone call from Connie at 10:00 or 10:30 a.m. that morning. After the telephone call ended, Ms. Pope testified that appellant went outside with the children, sat at the pool, and was at home all day.

Marquita Pope, appellant's sister, testified that she lived with her mother, father, two brothers, her two daughters, and appellant's two children. Marquita[2] stated she was at home on August 12, 2010, with appellant and other family members when her mother received the telephone call from Connie about the robbery. Marquita said she was at home about a week or two later when the police came and arrested appellant, but she did not notify anyone of

---

[1] Tennessee Code Annotated section 39-17-1324(i)(1) (2010) limits the underlying felonies for conviction under this statute. Especially aggravated burglary and aggravated burglary are qualifying felonies, but aggravated robbery is not. Thus, the fact that a firearm was used to accomplish the robbery of the victim did not satisfy the statutory requirements for conviction under this code section.

[2] Three witnesses have the same last name of Pope. By referring to the brother and sister of the appellant by first names, we intend no disrespect.

appellant's whereabouts at the time of the robbery because "[She] didn't know who to talk to, really."

During cross-examination, Marquita stated she remembered her mother's receiving the telephone call from Connie between 11:00 a.m. and noon. She was in her bedroom with her daughter, and she could hear appellant in his bedroom with his two sons. Marquita spoke with her mother about contacting the police to inform them that appellant had been at home with them at the time of the robbery, but no one did so. She emphasized that she, her mother, and her brother Marquez did not collaborate on an alibi defense for appellant.

Appellant's brother, Marquez Pope, testified that on August 12, 2010, he lived with his mother, father, his sister Marquita, her daughter, appellant, and appellant's two sons. He recalled being at home with appellant, his sister, and his mother the day his mother received an unusual telephone call. Marquez knew the victim as "the candy man," and the victim lived about fifteen to twenty minutes away by car. Marquez was at home the day the police came to arrest appellant. He found out what the charges were two or three days later. Marquez did not call or contact the police to tell them appellant had been at home with the family during the robbery because he did not think it would help. He told the jury, "If I would have knowed [sic] it would help, I would have, but you know what I mean, it just don't [sic] work out that way."

On cross-examination, Marquez testified that on the morning of August 12, 2010, he was "just at the house" and probably awakened around "ten-something." He recalled his mother's receiving the telephone call shortly after he woke up. Marquez acknowledged that he was acquainted with the victim but knew him as "just candy man." He also testified that he had made purchases from the victim when in the neighborhood visiting relatives. On the day of the robbery and burglary, Marquez recalled being at home with appellant and the rest of the family, and no one left the house that day. He stated that his mother was the only person who was employed and her work days varied. Marquez admitted he did not have his eyes on appellant during the entire twenty-four-hour day on August 12th because he was sleeping part of the time.

On redirect examination, Marquez admitted he had relatives living in the same neighborhood as the victim at the time of the robbery. Through recross examination, he agreed that somebody could have walked to the "store" that day, answering, "Well, we do smoke cigarettes, and like I said, ain't none of us working, so normally we would buy them loose, so after so long, we have to go and get some more." Marquez recalled that somebody probably walked to the store, but he could not recall which family member left.

Appellant testified that on August 12, 2010, he lived with his mother, brother, sister, and three children. He remembered attending to his two boys, letting them watch cartoons or going outside with them to play. Because he traveled to the victim's neighborhood every few months to take his children to visit their grandmother, he was familiar with the victim. He bought cigarettes and cigars from him and knew him as the "candy man." Appellant denied that he robbed the victim. Appellant testified that he was arrested on September 4, 2010, and was never interviewed by a detective or police officer before his arrest.

On cross-examination, appellant testified that he took his children to see their grandmother every few months and that he would only go see the victim when he wanted a cigarette. He never had a disagreement with the victim. He testified that he had many friends in the victim's neighborhood because it was his "home" neighborhood. Appellant recalled that when his mother received the telephone call from Connie, she handed him the telephone, but the caller did not say anything, and neither did he. He stated his mother told him, "[T]he candy man said that [you] robbed him." Appellant testified he had been to the victim's residence several times before the robbery, and the victim would know him when he saw him.

On rebuttal, Walter Burns, a uniform patrol officer with the Memphis Police Department, testified that he answered an assault call on August 12, 2010, at 1:56 p.m. at the victim's residence. When he arrived at the scene, Officer Burns found the victim with a gash on his head, saying he had been robbed. Reading from his incident report, Officer Burns testified the robbery occurred between 1:40 and 1:45 p.m.

The jury deliberated and found appellant guilty of aggravated robbery, a Class B felony, and aggravated burglary, a Class C felony. At the sentencing hearing, the parties and the court agreed that appellant was a Range I offender. Appellant made a statement to the trial court in which he asked for an opportunity to "be better." At the conclusion of the sentencing hearing, the trial court sentenced appellant to ten years for aggravated robbery and six years for aggravated burglary in the Tennessee Department of Correction, to run concurrently with each other. This appeal follows.

II. Analysis

Appellant contests his convictions and sentences on two grounds: the evidence was insufficient to support his convictions[3] and his sentences are excessive.

_____

[3] In his brief, appellant states that the evidence was insufficient to support either of his convictions. He sets forth the statutory elements of both offenses. However, he only articulates an argument with respect
(continued...)

A.  Sufficiency of the Evidence

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011).  To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319.  This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both.  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact.  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).  This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence.  *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).  Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings.  *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain a conviction for aggravated burglary as charged in the indictment, the State must prove that appellant entered a habitation without the effective consent of the property owner and with the intent to commit theft.  Tenn. Code Ann. § 39-14-402, -403 (2010).

---

[3](...continued)
to his conviction for aggravated burglary.  Therefore, any issue with respect to sufficiency of the convicting evidence for aggravated robbery is waived because he failed to support the issue with argument, citations to relevant authorities, or references to the record.  *See* Tenn. R. App. P. 27(a)(7)(A)-(B); Tenn. R. Crim. App. 10(b).

Appellant argues that because Mr. Brown invited appellant and the other assailant into his home, the elements of aggravated burglary cannot be met.

The proof in this case established that Mr. Brown operated a "store" in his home. He typically conducted his business through a window in his home because he had been robbed previously. Mr. Brown was acquainted with appellant through prior sales transactions and through the mother of appellant's children. Because it was very hot that day, Mr. Brown invited appellant and his associate inside to do business. Mr. Brown was under the impression that appellant and his associate were at his home to make purchases.

This court's opinion in *State v. Holland*, 860 S.W.2d 53 (Tenn. Crim. App. 1993), is instructive on this issue. In *Holland*, appellant created and reinforced the impression that he was on the victim's property for a legitimate reason by affiliating himself with workers who were present on the victim's property. *Id.* at 58. Under that guise, appellant entered the victim's home several times. *Id.* In evaluating whether the victim had given appellant effective consent to enter her home, this court said, "Before the victim's opening of the door for [appellant] to enter can be deemed 'effective consent,' it must have occurred without being induced by deception or coercion." *Id.* "Deception, under our statutory definition, occurs when one . . . 'fails to correct a false impression . . . of fact the person knows to be false and . . . knows is likely to influence another.'" *Id.* (quoting Tenn. Code Ann. § 39-11-106(a)(6) (1991 Repl.)). Thus, our court concluded that if the victim opened the door because of a "false impression created, reinforced, or not corrected by [appellant], she did not consent to his entry." *Id.* "But for the false impression created and reinforced by [appellant], the victim would not have consented to his entry." *Id.*

We further opined:

[Appellant], therefore, relied upon the false impression he had created and reinforced to get inside the victim's home. Once inside, he accomplished the felonious deed which prompted his entry. Thus, having peaceably gained entry by deception, [appellant's] entry into the victim's home cannot be deemed with "effective consent." In crediting the victim's version of the facts, the jury has found, as a reasonable factfinder could, that the state proved this element of the crime beyond a reasonable doubt.

*Id.* at 58-59.

The same reasoning applies to the instant case. Appellant, at the very least, failed to correct the victim's false impression that he was entering the victim's residence to conduct business as he had several times previously. Had it not been for this false impression, the

victim would not have allowed him entry because the victim had been robbed before. Thus, appellant's entry was not accomplished with the effective consent of the victim. The jury credited the victim's version of the events in finding appellant guilty as charged in the indictment.

Appellant also argues that the evidence did not sufficiently prove that he entered the victim's home with the intent to commit theft. The evidence refutes appellant's position. Appellant and his associate were armed when they entered the victim's home. The victim testified that there were two assailants, no more. The unknown assailant almost immediately charged toward the victim's money box. As the victim attempted to thwart the theft, appellant struck him on the head with a pistol. The victim identified appellant as the individual who bound his hands and feet. At times, the victim could see one assailant and would assume that the other was performing some other action. This alone does not contradict the sufficiency of the evidence because only two assailants were present, and appellant, or the unknown assailant for whom he was criminally responsible,[4] were both involved in all aspects of the burglary.

Finally, appellant contends that the victim's identification of appellant as one of the assailants was "questionable" in light of the alibi witnesses he presented and the victim's not knowing appellant's name until speaking with a neighbor. Appellant's argument, in effect, urges this court to re-weigh the evidence and the credibility of witnesses. We decline to do so. The jury heard the testimony of the three alibi witnesses and obviously credited the victim's testimony over the family members' testimony, which was its prerogative to do. Viewing the evidence in the light most favorable to the State, sufficient evidence supports appellant's conviction for aggravated burglary. He is not entitled to relief on this issue.

## B. Sentencing

Appellant argues that his ten-year sentence for aggravated robbery and his six-year sentence for aggravated burglary are inappropriate because the trial court failed to properly consider his youth as a mitigating factor and because it improperly relied upon the use of a firearm during the commission of the burglary.

### 1. Standard of Review

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the

---

[4] The trial court instructed the jury on the theory of criminal responsibility for the conduct of another.

presence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b) (2010). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (2010).

When imposing a sentence within the appropriate range of punishment for a defendant,

> the court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1)    The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2)    The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2010). From this, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting Tenn. Code Ann. § 40-35-210(d)).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, 40-35-210(c) (2010). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id*. § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to

the sound discretion of the trial court. *Carter*, 254 S.W.3d at 345. The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

When a trial court orders a sentence involving confinement, the court should consider whether: (A) "confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;" (B) "confinement is necessary to avoid depreciating the seriousness of the offense" or to "provide an effective deterrence to others likely to commit similar offenses;" or (C) less restrictive measures have been frequently or recently applied to defendant unsuccessfully. Tenn. Code Ann. § 40-35-103(1) (2010).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, ___ S.W.3d ___, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *17 (Tenn. Sept. 26, 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Id.* at 17. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

## 2. Appellant's Youth as a Mitigating Factor

In arriving at the appropriate sentence, the trial court considered, on the record, the appropriate factors set forth by the sentencing guidelines. *See* Tenn. Code Ann. §§ 40-35-103, -210 (2010). The court next reviewed appellant's criminal history and determined that he was a Range I, standard offender.

As enhancing factors, the trial court reviewed the presentence report, noted appellant's three prior misdemeanor convictions, and determined that appellant had a history of criminal behavior in addition to that necessary to establish the range of punishment and that appellant possessed or employed a firearm during commission of aggravated burglary. *Id.* at 40-35-

114 (1), (8).  Appellant asked the court to consider his youth and the support of his family as mitigating factors.

Appellant first argues that his resulting sentence is excessive because the trial court improperly rejected his youth as a mitigating factor.  Appellant's claim fails for two reasons.  First, improper weighing of enhancing and mitigating factors is not a proper basis for appealing a  sentence.  *See Carter*, 254 S.W.3d at 346.  Second, because the resulting sentence is within the appropriate range, is supported by the record, and is in compliance with the purposes and principles listed by the Sentencing Act, we will not disturb it.  *See Bise*, 2012 WL 4380564, at *17.  Appellant is not entitled to relief on this issue.

### 3.  Inapplicable Aggravating Factor

Appellant argues and the State concedes that the trial court erred in considering the aggravating factor that appellant used or possessed a firearm during commission of the aggravated burglary because the court specifically found otherwise in granting appellant's motion for judgment of acquittal.

We review the trial court's sentencing determination for abuse of discretion, attributed with a presumption of reasonableness.  The record reflects that appellant, despite his "youth," had already garnered a telling criminal history, including two counts of domestic violence and one count of disorderly conduct.  The trial court noted appellant's lack of employment history, his dropping out of high school, and his committing unnecessary violence against the victim.  Under our supreme court's guidance in *Bise*, even if  a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination.  *Bise*, 2012 WL 4380564, at *17. The resulting sentences were within the appropriate range, and the record demonstrates "that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.*  Thus, we will not disturb the trial court's decision.  Appellant is not entitled to relief on this claim of error.

### CONCLUSION

We have thoroughly reviewed the record and the briefs of the parties and have found no reversible error.  Accordingly, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE

-11-