IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 11, 2015 Session

## STATE OF TENNESSEE v. ADAM DANSBY FRAZIER

**Appeal from the Circuit Court for Hickman County**
**No. 125132CRA     Timothy L. Easter, Judge**

---

**No. M2014-01027-CCA-R3-CD – Filed June 11, 2015**

---

The defendant, Adam Dansby Frazier, appeals his Hickman County Circuit Court jury convictions of attempted second degree murder, possession of contraband in a penal institution, aggravated assault, and facilitation of felony reckless endangerment, claiming that the evidence was insufficient to support his conviction of attempted second degree murder and that the trial court erred by impermissibly commenting upon the evidence at trial. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Douglas Thompson Bates, IV (on appeal and at trial), and Douglas T. Bates, III (at trial), Centerville, Tennessee, for the appellant, Adam Dansby Frazier.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Kim R. Helper, District Attorney General; and Michael J. Fahey II, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The convictions in this case relate to the May 2012 prison riot at Turney Center Industrial Complex, in which the defendant, along with fellow prison inmates, Javoris Sparkman and Jarus Smith, attacked and injured prison guards Cody Hellam and Paula Miller. In August 2012, the Hickman County Circuit Court grand jury charged the defendant[1] with four counts of attempted first degree premeditated murder and one count

---

[1]     Mr. Sparkman and Mr. Smith were charged along with the defendant with four counts of attempted first degree premeditated murder, and both men were charged in separate counts with possession of contraband in a penal institution.

of possession of contraband in a penal institution. In February 2013, the grand jury issued a superseding indictment, which included the original charges and the additional charges of six counts of aggravated assault.[2] Just prior to trial, the State dismissed some of the charges. In October 2013, the trial court conducted a jury trial, and as relevant to the case against the defendant in this appeal, it proceeded to trial on the attempted first degree premeditated murder of Cody Hellam; the attempted first degree premeditated murder of Paula Miller; possession of contraband in a penal institution; the aggravated assault of Paula Miller; and the aggravated assault of Cody Hellam. Prior to opening statements, defense counsel announced a plea of guilty to the aggravated assault of Ms. Miller in response to the reading of the indictment. The trial court did not then accept the plea, and the aggravated assault charge was submitted to the jury.

The State's proof at trial showed that Turney Center is a medium/close security prison which houses approximately 1250 inmates. The guards at Turney Center do not carry weapons because of the high inmate-to-guard ratio. On May 4, 2012, both Mr. Hellam and Ms. Miller responded from their stations to a "code" that required the prison guards to move all inmates into their respective prison cells. When Mr. Hellam arrived at Unit 1, Pod B, he heard "a lot of yelling and screaming going on," and he attempted to "hurry up and get everybody locked down, try to contain the situation, get control of it." While he was attempting to move prisoners into their cells, he found himself in the midst of a group of inmates, "and the next thing I remember is me fighting my way through." Mr. Hellam was stabbed on the right side of his head, causing vision loss to his right eye and hearing loss to his right ear. Mr. Hellam testified that he also suffered from post-traumatic stress syndrome as a result of the assault.

When Ms. Miller arrived on the second floor walkway of Unit 1, Pod B, she was "stabbed in the face, . . . stabbed six times across the back and the shoulders," and she was beaten. Ms. Miller testified that the "weapon went inside . . . my face, it cut my jaw open, it cut my tongue partial way out." Photographs of the injuries to both Mr. Hellam and Ms. Miller were admitted into evidence.

Video surveillance footage from Turney Center on May 4, 2012, showed the defendant, Mr. Sparkman, and Mr. Smith loitering on a second-floor walkway outside a group of prison cells in Unit 1, Pod B while other inmates milled about; other Turney Center correctional officers testified at trial and identified each of the three men on the surveillance video. The defendant could be seen holding a knife, and Mr. Smith appeared to be holding a sock within which an object of some sort was concealed. A short time later, a prison guard appeared on the walkway; the guard walked from one side of the walkway to the other, eventually disappearing from view. The guard then reappeared on

---

[2]    Both Mr. Sparkman and Mr. Smith were charged with six counts of aggravated assault as well.

the walkway, followed by the defendant and Mr. Sparkman and Mr. Smith. Although he was almost out of view of the camera, the guard could be seen in the midst of several inmates, including the defendant. Suddenly, the guard ducked, and Mr. Smith swung the weighted sock at him. That guard disappeared from view as the defendant appeared to be lunging at him. A second guard appeared on camera, and she was immediately attacked by all three inmates. The defendant then could be seen stabbing the second guard three times before the guard managed to escape. The defendant, Mr. Smith, and Mr. Sparkman then retreated to a cell. Just before he entered the cell, the defendant could be seen tossing something along the walkway. The attack on the guards lasted approximately five seconds.

With this evidence, the State rested. Following the trial court's denial of the defendant's motion for judgments of acquittal and a *Momon* colloquy, the defendant elected not to testify and chose not to present any proof.

Based on this evidence, the jury acquitted the defendant of the attempted first degree murder of Mr. Hellam and convicted the defendant of the lesser included offense of the attempted second degree murder of Ms. Miller. In addition, the jury convicted the defendant as charged of possession of contraband in a penal institution and the aggravated assault of Ms. Miller. On the charge of the aggravated assault of Mr. Hellam, the jury convicted the defendant of the lesser included offense of facilitation of felony reckless endangerment. As mentioned above, in this appeal, the defendant challenges only the conviction of attempted second degree murder.

Following a sentencing hearing, the trial court merged the aggravated assault conviction of Ms. Miller with the attempted second degree murder conviction and sentenced the defendant as a standard offender to a term of 12 years' incarceration. In addition, the trial court imposed a sentence of 6 years' incarceration for the conviction of possession of contraband and a sentence of 11 months and 29 days for the conviction of faciliation of felony reckless endangerment, both to be served consecutively to the 12-year sentence, for an effective incarcerative sentence of 18 years, 11 months, and 29 days.

Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends only that the evidence was insufficient to support his conviction of attempted second degree murder and that the trial court erred by impermissibly commenting upon the evidence at trial. We will address both issues in turn.

*I. Sufficiency*

The defendant first contends that the evidence was insufficient to support his conviction of attempted second degree murder. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

Criminal attempt occurs when a person "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3). To qualify as a "substantial step," the person's "entire course of action" must be "corroborative of the intent to commit the offense." *Id.* § 39-12-101(b). "Second degree murder is . . . [a] knowing killing of another." T.C.A. § 39-13-210. "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." *Id.* § 39-11-302(b).

In the instant case, the proof at trial established that the defendant was standing on or pacing along the prison walkway while holding a knife for more than one minute before attacking Ms. Miller. The video surveillance footage clearly shows, in an unprovoked, frenzied attack, the defendant forcefully stabbing Ms. Miller three times. Ms. Miller testified that the knife entered the side of her face, "cut [her] jaw open, [and] . . . cut [her] tongue partial way out." Photographs admitted into evidence showed a large, jagged, crescent-shaped scar on the right side of Ms. Miller's face.

The defendant argues that the injuries to Ms. Miller were not of such a nature as to evince an intent to murder her. In support of his argument, the defendant cites *State v. Elder*, in which the defendant threatened to kill the victim and then later that same day shot the victim at close range in the lower back and leg. *State v. Elder*, 982 S.W.2d 871, 875 (Tenn. Crim. App. 1998). The defendant in *Elder* argued that the evidence was insufficient to support his conviction of attempted second degree murder because "his conduct was *not* reasonably certain to cause death." *Id.* In the instant case, the defendant contends that his conduct likewise was not indicative of an intent to kill.

The defendant's reliance on *Elder*, however, is misplaced. In *Elder*, we stated that the issue of "[w]hether the [defendant] 'knowingly' attempted to kill his victim is a question of fact for the jury." *Id.* at 876. This court continued, stating that "[i]ntent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence." *Id.* (citing *State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). The court, in affirming the conviction of attempted second degree murder, based its decision "on the use of a deadly weapon, the number of wounds inflicted, the seriousness of the wounds and the [defendant's] express statement, hours before the shooting, that he intended to kill the victim." *Elder*, 982 S.W.2d at 876.

Here, the defendant attacked Ms. Miller with a deadly weapon. Ms. Miller testified that the defendant stabbed her in the face and "six times across the back and the shoulders." Although photographs admitted into evidence of Ms. Miller's injuries do not show other significant stab wounds, the wound to her face was unquestionably severe. Unlike the defendant in *Elder*, the defendant in the instant case made no prior statement regarding an intent to kill Ms. Miller, but the jury was certainly free to infer the defendant's intent to kill, given the nature and circumstances surrounding this violent attack. *Elder*, 982 S.W.2d at 876.

Viewing this evidence in the light most favorable to the prosecution, we hold the evidence adduced at trial supports the defendant's conviction of attempted second degree murder.

## II. Trial Court's Comments

The defendant also contends that the trial court impermissibly commented on inadmissible evidence. Again, we disagree.

During Ms. Miller's trial testimony, she described her facial injuries, stating that the stab wound to her face partially severed her tongue and that "it's right on

the edge of the motor nerve." Defense counsel objected, citing lack of foundation for this medically-based assertion, and the trial court initially overruled the objection, stating, "Mr. Bates, you've admitted that your client assaulted this woman; aggravated assault." Defense counsel immediately requested a hearing outside the presence of the jury. At that hearing, counsel stated as follows:

> [T]he State charged [the defendant] with aggravated assault with a deadly weapon. They specified exactly the manner in which they wished to find [the defendant] guilty of aggravated assault. We have conceded, we have pled guilty that with a deadly weapon as defined, he assaulted Ms. Miller. We have not ever conceded that what Ms. Miller sustained was serious bodily injury. Its relevance could indicate for the attempted murder aspect of this trial, but only upon qualified evidence . . . but [Ms. Miller] is not entitled to now testify to medical evidence as to how close she came to death. The jury now has that inference, and I would move for a mistrial based on what the jury has just been told.

The trial court denied the defendant's request for a mistrial, brought the jury back into the courtroom, and gave the following instruction:

> Ladies and gentlemen, you may recall yesterday afternoon, after the charges were read to each individual defendant, Mr. Bates, on behalf of [the defendant], entered a plea to the charge of aggravated assault involving Ms. Miller.
>
> The allegation that has been made in the indictment on that particular charge states that [the defendant] caused bodily injury to Paula Miller by use of a deadly weapon, to wit: A prison-made knife.
>
> The legal definition of bodily injury is – and you'll get this again in the charge, but I wanted to give it to you now based upon some testimony that just occurred – but the legal definition for bodily injury is – or it includes a cut, abrasion, bruise, burn or disfigurement, physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty.
>
> Her testimony to you regarding the damage of a nerve,

I'm going to ask you to disregard that evidence and strike that
from testimony.

Although it is somewhat unclear, it appears the defendant's argument on this issue is two-fold: first, that the trial court's instruction to the jury was insufficient to mitigate the damage caused by Ms. Miller's statement, and second, that the trial court's comment regarding the defendant's admission of guilt to the aggravated assault of Ms. Miller, made on the heels of her reference to the "motor nerve," improperly validated Ms. Miller's statement.

With respect to the trial court's instruction, a jury is presumed to follow instructions from a trial court. *See State v. Cribbs*, 967 S.W.2d 773, 784 (Tenn. 1998). Moreover, Ms. Miller's statement that the facial wound was "right on the edge of the motor nerve" was relatively innocuous, and we disagree with the defendant's contention that the statement "was critical evidence . . . of [Ms.] Miller's medical injuries" in the determination of "how close the victim came to dying from the sustained injuries."

Regarding the trial court's statement that the defendant had admitted to committing an aggravated assault on Ms. Miller, we need not parse whether this amounted to improper commentary. The defendant announced his plea of guilty to the aggravated assault of Ms. Miller in the presence of the jury at the beginning of trial, and defense counsel referenced this guilty plea in his opening statement to the jury. As such, any error is clearly harmless. *See* Tenn. R. App. P. 36(b).

*Conclusion*

Based upon the foregoing analysis, we affirm the trial court's judgment of conviction of attempted second degree murder.

_____
JAMES CURWOOD WITT, JR., JUDGE